## JACKSON *v.* ROBY and Another.

## ROBY and Another *v.* JACKSON.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Submitted October 31st, 1883.—Decided December 3d, 1883.

*Mineral Lands—Revised Statutes.*

1. Section 2324 Rev. St. enacts that where certain mining claims referred to in the section are held in common, the expenditure upon them required by the act may be made upon any one claim: *Held*, that the act contem-

plates that this expenditure is to be made for the common benefit, and that one enjoying a mining right defined by metes and bounds does not, by expending money upon a flume which passes over adjoining land and deposits the waste from his mine on that land without benefit to such adjoining land, and without other evidence of a claim to it, thereby make an expenditure upon it within the meaning of the Revised Statutes.

2. In a suit under section 2326 of the Revised Statutes to determine adverse claims to lands containing valuable mineral deposits, if neither party shows a compliance with the requirements of law in regard to work done upon the claim, the finding should be against both.

This was a suit under § 2326 of the Revised Statutes to determine adverse claims to lands in Colorado with mineral deposits. The facts, and the relations of the parties, are fully set forth in the opinion of the court.

*Mr. John D. Pope* for Jackson.

*Mr. A. D. Bullis, Mr. M. B. Carpenter* and *Mr. Amos Steck* for Roby and another.

MR. JUSTICE FIELD delivered the opinion of the court.

Previous to the legislation of Congress in 1866, mining claims upon the public lands of the United States were held under rules framed by miners themselves in different localities. These rules prescribed the extent of ground which miners could severally appropriate for mining, and the conditions upon which such ground could be acquired and held. They bore a general similarity in different districts, varying only according to the extent and character of the mines. They all agreed in one particular, in recognizing discovery and appropriation as the source of title, and development by working as the condition of continued possession. The first discoverer could derive no benefit from his discovery unless he followed it up by work for the development of his claim; and what that work should be, the nature and extent of it, how soon it should commence after the discovery, and when its suspension should be deemed an abandonment of the claim, were specifically declared.

The act of Congress of 1866 gave the sanction of law to these rules of miners, so far as they were not in conflict with the laws of the United States. 14 Stat. 251, ch. 262, sec. 1.

Subsequent legislation specified with greater particularity the modes of location and appropriation and extent of each mining claim, recognizing, however, the essential features of the rules framed by miners, and among others that which required work on the claim for its development as a condition of its continued ownership. The act of 1872—and its provisions are re-enacted in the Revised Statutes—declares that on each claim subsequently located, until a patent for it is issued, there shall be annually expended for labor or improvements $100, and on claims previously located an annual expenditure of $10 for each one hundred feet in length along the vein ; and provides that when such claims are held in common, the expenditure may be upon any one of them. And it declares that upon a failure to comply with these conditions the claim shall be opened for re-location in the same manner as if no location of the same had ever been made, provided the original locators, their assigns, or representatives, have not resumed work upon it after failure and before re-location. 17 Stat. 93, ch. 152, sec. 5 ; Rev. Stat. § 2324.

The act also points out various steps which must be followed by a party who seeks to obtain a patent for his mining claim. Among other things, he must file an application in the proper land office under oath, showing a compliance with the law, together with a plat and the field notes of his claim or claims, made under the direction of the surveyor-general of the United States, showing its or their boundaries. He must also at the time, or within sixty days thereafter, file with the register a certificate of the surveyor-general that $500 worth of labor has been expended, or improvements to that amount have been made upon the claim by himself or grantors. If within sixty days thereafter an adverse claim is filed, accompanied by the oath of the party making it, showing its nature, boundaries, and extent, proceedings are to be stayed until the controversy has been settled by the decision of a court of competent jurisdiction, or the adverse claim is waived. And it is made the duty of the adverse claimant, within thirty days afterwards, to commence legal proceedings to determine the question of the right of possession. Rev. Stat. § 2326.

In this case it appears that the defendants claimed the premises in controversy as their mining ground, and made application for a patent. The premises are situated on Blue River, in the county of Summit, in the State of Colorado, and embrace twenty-three acres and forty-eight hundredths of an acre. The plaintiff asserted an adverse right to them as part of what is called in the record "The Thomas Klak Claim," and brought the present action to determine his right of possession. In his complaint he alleges that on the 9th of August, 1876, he was the owner of the Klak claim, and ever since has been such owner and entitled to its possession; that he worked the same as a placer mining claim in connection with other claims adjacent and contiguous to it; that the defendants some time in 1880 entered upon a part of said claim—that portion now in controversy—and have ever since wrongfully withheld its possession from him. He avers that the premises are worth $50,000; that the action is brought in support of his adverse claim; and he asks judgment for possession of the premises.

The defendants, besides denying the allegations of the plaintiff, set up a right to a portion of the premises by location and occupation under the mining rules of the district, and to the remainder by purchase from the original locators.

On the trial the plaintiff produced and gave in evidence a certificate of location of the Klak claim made by his grantors in 1869, and also showed that they were owners of claims in what is called Lomax Gulch, adjoining and contiguous to the Klak claim, and began to work such adjoining claims in 1872, and continued the work until and during 1880; that in prosecuting the work they used a flume which extended over the premises in controversy a distance of one hundred and fifty feet, by means of which the tailings from the Lomax Gulch—that is, the waste material—were carried and deposited on the premises, so that at the end they covered a greater portion of them—more than one-third thereof. From them the plaintiff traced his title. With the exception of the extension of the flume over the premises, and their use as a place of deposit for the waste material from the adjoining claims, it was not shown that either he or his grantors ever did any work

upon them, or ever had possession of them. He insisted, however, that this extension of the flume and use of the premises were sufficient to give him the right of possession under that clause of the statute which provides that where several mining claims are held in common the labor or expenditure required may be made on any one of them. The court below held, and so instructed the jury, that these facts were insufficient to establish any possession or right of possession in him, and that therefore he was not entitled to a verdict.

The defendants proved the location in July, 1880, of a portion of the premises in controversy, then vacant and unoccupied, and a purchase of the remainder from previous locators; but they gave no evidence that any work on the claim was done by themselves or their grantors; and the court held that they had not established a title for the consideration of the jury, who were directed so to find. The jury brought in a verdict that neither party had proven title to the property. The effect of this verdict was to leave the defendants, who had applied for a patent, without any right to it, so far as the premises in controversy were concerned, and to leave the plaintiff in no better situation.

The contention of the plaintiff was made upon a singular misapprehension of the meaning of the act of Congress, where work or expenditure on one of several claims held in common is allowed, in place of the required expenditure on the claims separately. In such case the work or expenditure must be for the purpose of developing all the claims. It does not mean that all the expenditure upon one claim—which has no reference to the development of the others—will answer. As was said in *Smelting* v. *Kent*, 106 U. S., at page 655:

"Labor and improvements, within the meaning of the statute, are deemed to have been had on a mining claim, whether it consists of one location or several, when the labor is performed or the improvements are made for its development, that is to facilitate the extraction of the metals it may contain, though in fact such labor and improvements may be on ground which originally constituted only one of the locations, as in sinking a shaft, or be at a distance

from the claim itself, as where the labor is performed for the turning of a stream or the introduction of water, or where the improvement consists of the construction of a flume to carry off the debris or waste material."

It often happens that for the development of a mine upon which several claims have been located, expenditures are required exceeding the value of a single claim, and yet without such expenditures the claim could not be successfully worked. In such cases it has always been the practice for the owners of different locations to combine and to work them as one general claim; and expenditures which may be necessary for the development of all the claims may then be made on one of them. The law does not apply to cases where several claims are held in common, and all the expenditures made are for the development of one of them without reference to the development of the others. In other words, the law permits a general system to be adopted for adjoining claims held in common, and in such case the expenditures required may be made, or the labor be performed, upon any one of them.

The language as to the construction of a flume to carry off the debris or waste material, at the conclusion of the citation above, has reference to such a structure as may be used to carry off the common debris of several claims, not to a flume used merely to remove the debris of one claim. Here no work was done for the general improvement of all the claims. The deposit of the debris from the Lomax Gulch on the premises in controversy, so far from tending to develop them, imposed obstacles in the way of their development, by covering them up with refuse matter.

There having been no work done by either claimant, plaintiff or defendants, on the premises in controversy, the court properly instructed the jury to find against both.

*Judgment affirmed.*