## DOHERTY ET AL. v. MORRIS.

1. PERFORMANCE OF ANNUAL LABOR ON MINE.—Labor performed by the owner of a mine in constructing a wagon road thereto for the purpose of better developing and operating the same may be treated as a compliance with the law relating to annual assessment work.

2. RES JUDICATA—JUDGMENT OF REVERSAL.—Where upon the retrial after reversal the evidence on a given question differs materially from that offered at the former trial, the former judgment of reversal is not *res judicata* of such question.

3. CONFLICT OF EVIDENCE IN CASES APPEALED.—When there is positive and irreconcilable conflict in the testimony, the supreme court

will not reconsider the credibility of witnesses or re-determine where the preponderance of evidence may be.

4. FORFEITURE AND RELOCATION OF MINING CLAIM.—Upon the issue of forfeiture of a mining location, by non-performance of assessment work, the conduct and interest of defendants who claim the advantage of a relocation through such forfeiture may be considered in weighing their testimony concerning the forfeiture.

5. SUPPLYING DEFECTS IN INSTRUCTIONS.—When instructions given on behalf of plaintiff are imperfect because of omissions to properly explain language employed, but that portion of the charge given at request of defendant supplies the deficiencies and the charge as a whole accurately states the law, the challenge thereto will be overruled.

*Appeal from District Court of Clear Creek County.*

Mr. L. C. ROCKWELL, for appellants.

Mr. I. N. SMITH and Mr. R. H. MORRISON, for appellee.

CHIEF JUSTICE HELM delivered the opinion of the court.

In the year 1881 three parties, Bryan, one of the appellants, Morris, the appellee, and a third person who will be referred to in this opinion as Alexander, were the owners of an unpatented lode in Clear Creek county called the "Great Republican." The undivided interest of Bryan in the lode was seven twelfths, that of Morris four twelfths, Alexander owning the remaining one twelfth. In January, 1882, appellant Doherty relocated the Great Republican, claiming that the original location had been forfeited by a failure to perform the annual assessment work for 1881. Upon perfecting the alleged relocation, Doherty conveyed to Bryan an undivided seven twelfths interest in the same, and to Alexander an undivided one twelfth, retaining for himself the undivided four twelfths interest which belonged to appellee Morris under the prior location.

Soon thereafter the parties named made application for a patent to the relocated claim. Morris filed an adverse claim in the proper U. S. Land Office, and during the month of

July, 1882, instituted the present suit in support thereof, The complaint contained the usual averments in connection with adverse proceedings. It also alleged a conspiracy on the part of Bryan, Doherty and Alexander to defraud Morris of his interest in the property through the pretended relocation. The latter and other similar allegations were evidently pleaded, and proofs in support thereof offered primarily for the purpose of charging the relocation. with a constructive trust in favor of Morris. The first trial resulted for defendants, and Morris invoked his statutory right to a retrial by payment of costs. The second verdict being in his favor, an appeal was taken from the judgment entered thereon to this court. Here, a reversal took place, the court holding that questions of conspiracy, fraud, etc., could not properly be adjudicated through the present adverse suit for the purpose of establishing an equitable interest in the Doherty location; also, that the proofs then before the court were insufficient to show a performance upon the Great Republican of the annual assessment work required by law for the year 1881. *Doherty v. Morris*, 11 Colo. 12.

The cause being remanded, a new trial took place in which the issues and evidence were confined mainly to the question of annual labor for the year mentioned; it is true that some proofs indirectly touching the alleged bad faith of defendants were received; but their admission was solely upon the issue of forfeiture; the conduct and interest of defendants in the premises were pertinent subjects for consideration in weighing their testimony concerning the nonperformance of annual labor. Plaintiff again recovered a verdict. Defendants paid the costs and took a new trial under the statute. The fourth and last trial resulted also in a judgment for plaintiff, which judgment is now before us for review.

The performance by Doherty of the acts requisite to a valid location is not seriously contested, and if the ground was subject to relocation defendants were entitled to a verdict in this action. The present examination will therefore

be confined mainly to the question of annual assessment work upon the Great Republican lode for the year 1881. The parties substantially agree that no ordinary development work was actually done within the surface boundaries of the claim. It is, however, strenuously contended that the law in this particular was complied with by the construction of a wagon road up Cottonwood Gulch to the Great Republican and Little Mattie, adjoining claims. We do not hesitate to assert that labor performed by the owner of a mine in constructing a wagon road thereto for the purpose of better developing and operating the same may be treated as a compliance with the law relating to annual assessment work thereon. This view besides being correct on principle, is also we think in accord with the rule laid down in the following cases: *St. Louis Co. v. Kemp*, 104 U. S. 636; 11 Morrison Min. Rep. 673; *Mount Diablo v. Callison*, 5 Sawyer, 439; 9 Morrison Min. Rep. 616.

The opinion in *St. Louis Co. v. Kemp*, *supra*, uses this language: " Labor and improvements within the meaning of the statute are deemed to have been had on a mining claim, * * * when the labor is performed or the improvements are made for its development, that is, to facilitate the extraction of the metals it may contain, though in fact such labor and improvements may * * * be at a distance from the claim itself." And in *Mount Diablo v. Callison*, *supra*, it is declared that, " Work done outside of the claim * * * if done for the purpose and as a means of prospecting or developing the claim * * * is as available for holding the claim as if done within the boundaries of the claim itself."

This controversy therefore resolves itself substantially into the following question of fact : Was a wagon road constructed in 1881 for the purpose above mentioned, and was the sum of $100 reasonably expended thereon in behalf of the Great Republican owners ? Both branches of this question are vigorously answered in the negative by counsel for appellants. The evidence now before us upon these subjects,

besides being more extended, differs materially from that offered at the trial formerly reviewed by this court.

With the important preliminary observation last above made, we pass to a consideration of this evidence. In August of the year 1881 Morris went east and did not return until the succeeding spring. He testifies: That prior to his departure it was agreed between himself and one Vandenberg, manager of the Little Mattie, that Vandenberg should construct this wagon road for the benefit of both mines, and that $100 of the expense should be contributed by the owners of the Great Republican, the same to count, if legally allowable, as annual assessment work; that Vandenberg then estimated the cost of the road to be $750 and wanted the Great Republican owners to pay about one half; that he (Morris) declined for the time being to contribute more than the $100 mentioned, the matter of paying half of the total cost being left for consideration after the road was completed and the exact amount ascertained; that he told Vandenberg to see defendant Bryan, who was a practicing lawyer and part owner in the Little Mattie as well as the Great Republican, and learn if work done upon the road could be legally considered annual assessment work under the statute; that he himself afterwards saw Bryan who told him he had talked with Vandenberg and that such expenditure would apply upon the annual assessment; that the road was built in pursuance of the agreement. One Brown, who was in the employ of Morris, testifies that after Morris' departure, Vandenberg informed him that he had agreed to do the assessment work for the Great Republican, upon this road; also, that the same had been done, and when he wrote Morris he might say that the affidavit of annual labor was made. Vandenberg admits that the road was constructed at the time mentioned; he also admits having a conversation with Morris prior to the latter's departure in relation thereto; but positively denies that the subject of annual assessment work was considered or even mentioned in such conversation; he also denies emphatically that Morris for himself or

for the Great Republican owners promised, except upon certain conditions, to contribute $100 or any other sum toward the cost of the road; he asserts that no absolute contract of any kind was actually consummated, and contradicts both Morris and Brown in several minor particulars. Bryan states that he knew of no agreement through which the Great Republican owners were to contribute toward the construction of the road for the purpose of paying the annual assessment upon the Great Republican, or for any other purpose whatever. He contradicts Morris as to the alleged conversation with him concerning the application of such work to the statutory annual assessment.

The testimony bearing upon the alleged agreement is of considerable length, and no pretense is made that the foregoing rehearses it in detail. But it is believed that the views and assertions of the four witnesses mentioned are fairly presented.

Thus, upon the question of the making of this agreement, there is positive and irreconcilable conflict in the evidence. The testimony of Morris is severely attacked by counsel for appellants. It is claimed that he contradicted himself in the different trials to such an extent as renders him unworthy of belief. We find some discrepancies, but considering the change in the issues, the magnified importance of the subject of annual assessment work in view of our former decision, and the lapse of time between the dates of his appearance as a witness, we cannot say that these inconsistencies are such as to produce the effect claimed for them by counsel.

Certain circumstances remain to be mentioned which tend to corroborate Morris upon the existence of the agreement in question. After the road was constructed and before the 1st of January, 1882, Vandenberg notified Bryan in response to an interrogatory by him that the annual assessment work upon the Great Republican for the current year had been performed; whereupon Bryan, who, as already suggested, was a lawyer, prepared the requisite affidavit showing such assessment work, and Vandenberg attached his signature

and oath thereto. Vandenberg, it is true, now denies all recollection of this affidavit; but its introduction in evidence, coupled with his own testimony formerly given, and that of Bryan in the present trial, puts its existence beyond doubt. It was not filed for record because, according to Bryan, it was prepared under a misapprehension of law. Bryan wrote Alexander, who was also absent from the state, not to be alarmed, that the annual assessment work upon the Great Republican lode was or would be done. A telegram was sent in the name of Bryan to Alexander stating that the work was done and the requisite affidavit made, though not filed. The operator swore that this dispatch was signed in Bryan's own handwriting.

If there was no agreement or understanding whereby Vandenberg was to cause the annual assessment work to be performed upon or on behalf of the Great Republican lode, his conduct as well as that of Bryan in relation to the foregoing affidavit is indeed strange. Bryan explains the affidavit transaction. In so far as this explanation rests upon the theory that there was a mistake of law with reference to the sufficiency of road work as annual labor, we have seen that it is erroneous, since work of this kind would be sufficient to prevent forfeiture under the statute. In so far as this explanation rests upon a mistake of fact arising from misinformation through Vandenberg, coupled with his (Bryan's) habit of preparing such affidavits in advance to be executed by parties performing the work, it is not satisfactory. The communications of Bryan, telegraphic and written, and the admissions upon the witness stand of Vandenberg touching this annual assessment are also corroborative to a greater or less extent of the theory that some contract or understanding on the subject existed. We do not feel warranted in disturbing the finding of the jury on the ground that the proof fails to establish an arrangement by or on behalf of the Great Republican owners for compliance with the annual assessment statute by aiding in the construction of the wagon road mentioned.

We turn now to the remaining branch of the present discussion. Does it fairly appear by the evidence that work to the value of $100 was performed upon the road in question on behalf of the Great Republican lode? A small part of this road was constructed within the boundary lines of the Great Republican location. The witnesses differ as to its total length, their estimates varying from thirty or forty rods to a mile. There is also conflict between them as to the difficulties of the undertaking and the necessary expenditure required. Those called by plaintiff fixed the reasonable cost of construction at from $400 to $600; on the other hand, the figures given by those sworn for defendants range from $90 to $125. The cost of building this road as we have seen was not to fall upon the Great Republican alone. Aside from the amount necessary to cover the annual assessment work, viz., $100, the liability of the Great Republican was merely contingent. If the total expenditure upon the road was less than $100, the pivotal issue of assessment work should unquestionably have been resolved against Morris. But if the jury believed Morris and his witnesses, they could have fixed the total cost as high as $600. Considering the evidence as presented, we cannot predicate a reversal upon the theory that the actual value of the labor performed was so small as to forbid the conclusion that the Great Republican owners might fairly be charged under the contract with a contributory liability of $100.

Besides, the attitude of defendants in certain other respects is such as to cast suspicion upon the good faith of the alleged relocation, and subject their conduct in the premises to the most careful scrutiny. Defendant Doherty, who relocated the property, was at the time of the relocation in Bryan's employ. As already indicated, within a few days after filing his relocation certificate, he conveyed to Bryan and Alexander interests in the relocation corresponding in extent precisely to their interests in the original location. The evidence does not show any consideration for these conveyances, and when plaintiff's counsel offered to prove that

they were purely voluntary and without consideration, the offer was, upon objection interposed by defendants, refused. While these circumstances are not direct evidence upon the alleged forfeiture of the original Great Republican location, they might properly have influenced the minds of the jury in determining the degree of credence and weight to be given the testimony of defendants, Bryan and Doherty. Alexander was not made a party to the suit, or called upon to give testimony.

The correctness of the court's rulings in giving and refusing instructions is challenged by appellants. The instructions given on behalf of plaintiff might have been more specific. It is possible that standing alone they would be subject to criticism; but neither of them is radically wrong so far as it goes, and the alleged defects were by way of omissions to properly explain certain propositions announced and declarations employed. Defects in this regard, if any existed, were, however, cured by the instructions given at request of defendants. This portion of the charge is full and complete, supplying such deficiencies as might be found in the part announced on behalf of plaintiff. The charge as a whole was as liberal toward defendants as the law would permit; the legal principles applicable to the evidence were presented with sufficient accuracy, and the jury could not have been deceived or misled to defendant's prejudice.

The objections argued touching the admission of testimony are not of sufficient importance to warrant extended consideration. Enough has already been said to show at least one substantial ground for receiving the declarations of Bryan relative to the assessment work in question; the same observation is likewise true of the affidavit prepared by Bryan and sworn to by Vandenberg.

This cause was begun upwards of nine years ago. It has been tried four times before a jury, and three verdicts have been rendered in favor of plaintiff. Two of these verdicts were upon the issue of forfeiture by non-performance of assessment work. As already indicated, it is now before this

court for a second review. These considerations would of course not be controlling were material error apparent in the record, but they do not lessen the willingness with which we affirm the judgment and end the litigation.

*Affirmed.*