# NEVADA EXPLORATION AND MINING COMPANY v. SPRIGGS et al.

No. 2275.   Decided June 10, 1912 (124 Pac. 770).

1. MINES AND MINERALS—ADVERSE CLAIM—JURISDICTION. The question whether land is mineral in character cannot be determined in an action in aid of an adverse claim, but such determination is for the United States Land Department in the first instance; and, where the land department had recognized a mining location as valid, the court in an adverse action cannot review the action of the department; such actions being merely to settle the right of possession between adverse claimants.[1] (Page 176.)

2. MINES AND MINERALS—ADVERSE CLAIM—SCHOOL LAND. The mere fact that mining locations were made on a school section after Utah became a state was not conclusive that the lands were nonmineral in an action in aid of an adverse claim. (Page 177.)

3. MINES AND MINERALS—ASSESSMENT WORK—SCHOOL LANDS. Where, prior to the act of Congress granting section 36 to the state as school lands, mineral locations had been made on one such section, the title to this particular section did not pass to the state, and assessment work done thereon was not invalid because done upon a school section after statehood. (Page 177.)

4. MINES AND MINERALS—ADVERSE CLAIM—EVIDENCE. Where, in an action in aid of an adverse claim, there was direct and positive evidence from expert miners and mining engineers that the assessment work had been properly done, the trial court properly refused to substitute his own judgment therefor. (Page 178.)

5. MINES AND MINERALS—PLANS AND SPECIFICATIONS—"SYSTEM." The claimant of a mining claim need not prepare plans and specifications to show how he intends to develop it; the requirement that he adopt a "system" or "general system" simply meaning that the work as commenced should be such that, if continued, will lead to the discovery and development of supposed veins, or, if these veins are known, that the work will facilitate the extraction of the ores. (Page 179.)

---

[1] Lavagnino v. Uhlig, 26 Utah, 1, 71 Pac. 1046, 99 Am. St. Rep. 808.

6. APPEAL AND ERROR—REVIEW—FINDINGS—ADVERSE CLAIM—WEIGHT
OF EVIDENCE. Where, in an action in aid of an adverse claim,
the trial court finds that the assessment work is sufficient to
prevent the claim from being open for relocation, and thus
declares against a forfeiture, such finding will not be disturbed
on appeal unless clearly against the preponderance of the
evidence.[2]  (Page 180.)

STRAUP, J., dissenting.

APPEAL from District Court, Third District; *Hon. Geo.
G. Armstrong,* Judge.

Action by Nevada Exploration and Mining Company
against Cyrus H. Spriggs and others.

Judgment for defendants.  Plaintiff appeals.

AFFIRMED.

*J. M. Denny* for appellant.

*E. W. Senior,* and *Snyder & Snyder* for respondent.

#### APPELLANT'S POINTS.

After the evidence is in it is to be judged solely by the
court and will be given such weight as it is entitled to, and
if it runs counter to the court's conviction of truth, in the
exercise of its knowledge and judgment it may disregard
it entirely.  (Lawson on Expert and Opinion Evidence, 182;
Rogers on Expert Testimony, sec. 207; *The Conqueror,* 166
U. S. 31.)  The court is not required to believe testimony
because it is uncontradicted.  (*Punsky v. City of New York,*
114 N. Y. S. 66.)  It is not important for us to know what
the claims of the parties have been; we must look to the facts
as they actually existed.  (*Warren v. VanBrunt,* 19 Wall,
653.)  The court will search the record in vain for any evi-
dence of the adoption by defendants or their predecessors in

---

[2] Murray Hill M. & M. Co. v. Havenor, 24 Utah, 73, 66 Pac. 762.

interest of a general system of development of the Oxford claims, and particularly prior to the location of plaintiffs' claims, and without such evidence the testimony of the expert witnesses as to their ideas gathered from conditions which they found upon the premises are purely conjectural and cannot be accepted as proof of any fact, regardless of the expert character of the witness. (*Neesley v. Southern Pac. Co.*, 35 Utah, 259, 99 Pac. 1067-70.)

Assessment work may be done on other claims or upon other ground, where as here, it is in reasonable proximity to it; and if the work, as done, would be beneficial and tend to the further development or improvement of the claims, it is sufficient. (*Justice Mining Co. v. Barclay*, 19 Mor. 78.) And improvements relied on must, as held in *Smelting Co. v. Kemp*, 104 U. S. at page 655, be made for the development of the claim to which it is sought to apply them, that is, in the language of the Supreme Court, "to facilitate the extraction of the minerals it may contain." (*Gird v. Cal. Oil Co.*, 60 Fed. 531, 18 Mor. 62.)

While it is undoubtedly the law that improvements put upon one of a group of contiguous claims, to which the particular claim belongs, and for the common development of all, are to be considered in determining whether improvements for a given year have been made, the utmost that can be credited to any one claim on this account is its proportion of the common benefit. (*Upton v. Santa Rita Mining Co.*, 89 Pac. [N. M.] 284.)

The word "improvement" as thus used, evidently means such an artificial change of the physical conditions of the earth in, upon or so reasonably near a mining claim as to evidence a design to discover mineral therein, or to facilitate its extraction, and in all cases the alteration must reasonably be permanent in character. (*Fredricks v. Klauser*, 96, Pac. 382. Or. 1908.)

RESPONDENT'S POINTS.

If the claims are held in common and the assessment work tends to develop the claim in question, it is sufficient. (*Klop-*

*enstine v. Hays,* 20 Utah, 45, 57 Pac. 712; *Wilson v. Triumph Mining Co.,* 19 Utah, 66, 56 Pac. 300, 75 Am. St. Rep. 718; *Fissure Mining Co. v. Old Susan Mining Co.,* 22 Utah, 438, 63 Pac. 587.) Judge Hawley, in the Federal court, says that it is sufficient if it "would be beneficial and tend to the future development or improvement of the claims." (*Justice Mining Co. v. Barclay,* 82 Fed. 554, 560.) And in a later case the same learned judge announced the rule that—

"Labor and improvements within the meaning of the statute, should be deemed to be done when the labor is performed or improvements made, for the purpose of working, prospecting, or developing the mining ground embraced in the location." (*McCulloch v. Murphy,* 125 Fed. 147, 149. See also *St. Louis S. & R. Co. v. Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Snowy Peak Mfg. Co. v. Tamarack Mfg. Co.,* 107 Pac. [Idaho] 60.)

It is uniformly held that work which has a reasonable tendency to develop the claim will be held sufficient, and that the court will not substitute its judgment for that of the miner as to the wisdom and expediency of the method employed for developing the group. (*Mann v. Budlong,* 127 Calif. 577, 62 Pac. 120; *Stone v. Bumpus,* 46 Calif. 218.)

FRICK, C. J.

This is an action in support of an adverse claim which was filed in the United States Land Office at Salt Lake City. The pleadings are in the usual form in such actions. After the action had been pending for some time, the parties stipulated that the application for a patent include additional claims which had theretofore been omitted from the pleadings, and that such claims, two in number, should be considered as a part of respondents' counterclaim. This stipulation was filed on the 10th day of November, 1910. On the day following, to wit, on the 11th day of November, when the case was called for trial, the parties presented a stipulation of facts, which reads as follows:

"It is hereby stipulated and agreed that it may be and is hereby admitted as evidence and used as evidence at the trial of this case that the defendants in this action were and are each and all citizens of the United States, and that they or their predecessors in interest, all citizens of the United States, made a valid discovery of mineral-bearing rock in place upon each and every of the locations and mining claims mentioned as claimed by defendants in their answer and counterclaim, and that defendants complied fully with the law in the matter of the marking of the boundaries of said locations or mining claims and in the matter of posting notices thereon, and in the matter of recording the notices of location pertaining thereto, and that the plaintiff did likewise with reference to each and every of the locations or mining claims mentioned as claimed by plaintiff in its complaint, the purpose of this stipulation being that the foregoing statement of facts is conceded by both parties and for that reason to avoid unnecessary waste of time and the incumbering of the record in said case, and to limit the inquiry to the question of law and fact as to whether or not the ground involved was subject to location at the time of the respective locations, and whether or not defendants complied with the law relative to annual assessment work prior to the locations made by the plaintiff herein."

Pursuant to this stipulation, the evidence seems to have been confined to the question of whether the assessment work which was done by the respondents was such as tended to develop their claims, and whether or not locations on some of the conflicting claims included here were made at a time when the ground was open for location. Notwithstanding the stipulation, the findings of fact are divided into not less than fifty separate paragraphs, covering many pages of the printed record. The court found the issues in favor of respondents' contentions and entered judgment accordingly, from which this appeal is prosecuted. Six of the findings of fact are assailed by appellant as not being supported by the evidence. As we have pointed out, the parties stipulated with respect

to bring into the case two additional mining claims, namely, "Oxford No. 7" and "Oxford Fraction No. O."

Appellant's counsel contend that, inasmuch as it was made to appear that these claims were located on section 36, which, by a certain act of Congress, was granted to the State of Utah, therefore the locations must be assumed to have been made upon nonmineral land, and thus be held of no effect, and that the court erred in finding to the contrary. By referring to the stipulation filed at the commencement of the trial, it will be seen that the parties stipulated the character of the land upon which all the locations in dispute in this action were made. The stipulation recites that the parties "made a valid discovery of mineral-bearing rock in place upon each and every of the locations of mining claims mentioned as claimed by defendants (respondents) in their answer and counterclaim." We think by this stipulation it was intended to, and that it did, settle the character of the land upon which all the locations involved in this action were made as being mineral in character. But, even if this were not so, the question respecting the character of the land, if it were sought to contest the character, should have been presented in the land office for determination. Actions in aid of adverse claims arising out of conflicting areas or otherwise are merely for the purpose of determining which one of two claimants is entitled to possession of the claims in dispute. The United States Land Department should, in the first instance, determine the character of the land in so far as that question is involved in an application for a patent for mining claims.

In referring to the question of who ordinarily is to determine the character of lands in congressional land grants, District Judge Hanford, in speaking for the United States Circuit Court, in *Northern Pac. Ry. Co. v. Soderberg* (C. C.), 86 Fed. 50, said:

"The decisions of the Supreme Court establish the rule that, where lands of a particular class or description have been granted by an act of Congress without making other particular provision as to the manner in which the same are to be iden-

tified, questions as to the character of the lands within the limits of the grant, which are claimed under it, are to be decided in the first instance by the officers of the Land Department, and that decisions of such questions made in the Land Department are conclusive, unless impeached for fraud, or overruled by the courts on the ground of error in the interpretation or application of the law."

A number of cases are there cited in support of the text. The same question was before the Supreme Court of Wyoming in *Wright v. Town of Hartville,* 13 Wyo. 497, 81 Pac. 649, 82 Pac. 450, in which it is held that, in actions in aid of adverse claims, the character of the land is not a question for determination by the courts. In *Lavagnino v. Uhlig,* 26 Utah, 1, 71 Pac. 1046, 99 Am. St. Rep. 808, this court held that actions like the one at bar were instituted to determine which one of two or more claimants had the right of possession.

The mere fact, therefore, that mining locations were made on a school section after Utah became a state is not conclusive that such lands were nonmineral and not **2** subject to being located as mining claims. We are of the opinion, therefore, that, where the officers of the United States Land Office have recognized a mining location as a valid location, as is the case here, the courts, in an adverse suit, cannot review the action of such officers, but, if it is desired to assail the character of the land as being nonmineral, it must be done in the first instance in the Land Office.

Counsel for appellant, however, insists that he is not assailing respondents' locations in question upon the ground that appellant claims any right in or to them, but upon the sole ground that the locations were made upon a school section after Utah was admitted to statehood, and that the assessment work for the group of respondents' claims, which are here involved, was done upon lands ostensibly owned by the State of Utah and not by respondents, and that such **3** work, therefore, cannot be legally claimed as assessment work. In addition to what we have already said upon this question, the record also discloses that the authorities

representing the State of Utah regarded and treated the land
in question as mineral land, and disclaimed any right there-
in or thereto. It further appears that mineral locations had
been made on the section in question as far back as 1893, long
before the congressional act granting section 36 among others
to the State of Utah as school lands was passed. Moreover,
title to lands known to be mineral does not pass out of the
United States under congressional land grant acts, such as the
one under which school lands were granted to the State of
Utah. This is no longer an open question. (*Min. Co. v.
Con. Min. Co.,* 102 U. S. 167, 26 L. Ed. 126; *Steel v. Smelt-
ing Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226.)
The land in question must therefore be deemed to be mineral
land and that the title thereto never passed to the State of
Utah.

It follows, therefore, that, if the assessment work was
otherwise sufficient to entitle the respondents to a patent, the
mere fact that it was done upon section 36 is of no impor-
tance under the circumstances.

The next proposition argued is that the court erred in find-
ing that respondents had done the requisite amount
of assessment work and had made the necessary          **4**
amount of improvements to entitle them to a patent
for the mining claims in dispute. It is contended that the evi-
dence is insufficient to sustain such findings. The principal
objection in this regard is that the work, which consisted of
sinking a shaft and running drifts therefrom, was not cal-
culated either to prospect or to develop the entire group of
mining claims, or any considerable part thereof, because the
shaft in question was too far distant from some of the claims,
and because the drift, even if run from the shaft, would not
reach an appreciable depth below the surface because the ele-
vation of the claims was not much above the elevation of the
shaft. There is some direct and positive evidence from expert
miners and mining engineers in the record that the shaft and
the drifts as constructed tended to develop the whole group
of claims, and that the work was also proper as prospecting
work. We think the trial court was right in not substitut-

ing his own judgment for that of the mining men and engineers. The courts should be very slow, indeed, in holding that certain work is not calculated to develop certain mining claims, or is not proper prospecting work, when there is competent evidence that such is the effect of the work in question, and where there is no evidence to the contrary.

The Supreme Court of California in *Mann v. Budlong,* 129 Cal., page 579, 62 Pac., page 120, in reversing the trial court upon this subject, says:

"A court will not be permitted to substitute its own judgment as to the wisdom and expediency of the method employed for developing the mine in place of that of the owner."

In that case the contention was as here, that the work done was not such as would develop the mining claims. For an intelligent discussion of the subject, see 2 Lindley on Mines (3d Ed.), sec. 631.

In *Chambers v. Harrington,* 111 U. S. 353, 4 Sup. Ct. 428, 28 L. Ed. 452, Mr. Justice Miller adopts and quotes the language of Judge Sawyer used in another case as follows:

"Work done outside of the claim, or outside of any claim, if done for the purpose and as a means of prospecting or developing the claim, as in cases of tunnels, drifts, etc., is as available for holding the claim as if done within the boundaries of the claim itself. One general system may be formed, well adapted and intended to work several contiguous claims or lodes, and, where such is the case, work done in furtherance of the system is work on the claims intended to be developed."

See, also, *Smelting Co. v. Kemp,* 104 U. S. 655, 26 L. Ed. 875.

But counsel insists that there is no proof that respondents had in fact adopted a general system, or any system, for the development of their claims. We think that it is not necessary for a claimant to prepare plans and specifications with regard to how he intends to develop his claims. The purpose of the law is to require claimants to do such work or to make such improvements as may be said are calculated to prospect the claims, or that will develop the mineral in the claims, or will facilitate the extrac-

tion of the mineral found therein. In many instances, if a fixed plan were adopted in advance of exploration, it, for obvious reasons, would have to be departed from before pursuing it many days, and in all cases where veins were found, the strike of which was in the direction different from that in which they were assumed to be, the entire plan would necessarily have to be changed. We think that what is intended by the use of the term "system" or "general system" of work means simply this: That the work as it is commenced on the ground, is such that, if continued, will lead to a discovery and development of the veins or ore bodies that are supposed to be in the claims, or, if these are known, that the work will facilitate the extraction of the ores and mineral. This latter purpose is well illustrated by the Supreme Court of Colorado in *Doherty v. Morris*, 17 Colo. 105, where it is held that the construction of a wagon road leading to and making the claims accessible was sufficient as assessment work to prevent forfeiture of the claims.

Counsel for appellant further insists that, although it were assumed that the work in question was sufficient in quantity and value at the time the application for patent was made to entitle the respondents to a patent, yet the court erred in finding that the work had been done in proper time in each year, and that therefore the conflict area included in the application for patent was not open to location when appellant made its location. The deputy United States mineral surveyors certified that the work and improvements made are sufficient in quantity and character to entitle the respondents to a patent. True these certificates and much of the evidence in support thereof relate to the time that the application for a patent was made, but there is also considerable evidence in the record that the work, from year to year, was sufficient to prevent a forfeiture of the claims and to prevent the ground from being open for location. Appellant's contention that such is not the fact is largely based upon its contentions, which we have already considered, that the work was done upon nonmineral ground, and that it was not done to develop the claims. It is true, as appellant's

counsel suggests, that, although it were conceded that the assessment work was sufficient in quantity and character, yet, if it had no relation to the claims that were relocated by appellant, then such claims could not have been represented or held by the work in question. As we have seen, the court found the work was sufficient, and, as a legal conclusion, further found that the claims sought to be relocated by appellant were not open for relocation when the attempted relocation was made. In cases like the one at bar, this court has held that the general findings of the trial courts, when "not clearly against the preponderance of the evidence," will not be disturbed. (*Murray Hill M. & M. Co. v. Havenor*, 24 Utah, 73, 66 Pac. 762.)

. When, therefore, as in this case, a forfeiture is involved, then before this court will disturb a finding which prevents such forfeiture, it must very clearly be made to appear that the finding is not supported by the evidence, or it will be upheld. This has so often been declared to be the rule applicable to relocations of mining claims that we shall do no more than to refer to a few of the many cases that might be cited. In *McCulloch v. Murphy* (C. C.), 125 Fed. 150, Hawley, District Judge, in referring to this subject, says:

"The rule is well settled that a forfeiture cannot be established except upon clear and convincing proof of the failure of the original locator to have work performed or improvements made to the amount required by law. The burden of proof to establish a forfeiture rests upon him who asserts it."

To the same effect are *Hammer v. Garfield M. & M. Co.*, 130 U. S. 291-301, 9 Sup. Ct. 548, 32 L. Ed. 964; *Upton v. Santa Rita M. Co.*, 14 N. M. 96, 89 Pac. 287. While it is true, as is held in *Fredericks v. Klauser*, 52 Ore. 110, 96 Pac. 679, that proof showing that no work was done within the surface boundaries of a mining claim for a certain year constitutes *prima facie* evidence that the representation work was not done for that year, yet it is only *prima facie* evidence of the fact which may be shown to be otherwise by showing that the work was in fact done for the claim at some other place or underneath the surface. There is substantial

evidence in support of the court's finding in this regard, and we do not feel at liberty to say that the court should have found to the contrary, and thus have enforced a forfeiture against respondents.

Upon the whole record, the findings objected to are not so clearly against the evidence as to authorize us to disturb them. The judgment is therefore affirmed, with costs to respondents.

McCARTY, J., concurs.

STRAUP, J. (dissenting).

I dissent. I think there is no substantial evidence to support the finding that the assessment work done by respondents, outside of the claims in controversy and the area in conflict, prospected, developed, or tended to prospect or develop such claims, or that the work was done for any such purpose. Respondents claimed seven or eight claims. They did work on one which they claim inured to and was for the benefit of all. The work done by them on the one claim was the sinking of a shaft about 122 feet deep, one or two short drifts, and the running of a tunnel 114 feet long. This work, most of which was done after appellant's location, is claimed inured to the benefit of the six or seven other claims, tended to develop them and to discover mineral therein, and facilitated the extraction of ore therefrom. It is shown that to extend the tunnel to such claims and to the area in conflict would require the tunnel to be extended a distance of from 3,700 to 4,500 feet, and that, when the tunnel is so extended, a depth on such claims of only sixty-four feet would be attained. While so-called experts testified that in their opinion the work inured to the benefit and to development of such claims, yet, when asked on what facts such opinions were based, their answers, in my judgment, disclosed none. It is not shown that the vein on the claim on which the work was done is the same vein on the claims alleged to be benefited by such work. I think what evidence there is on the subject shows the contrary. It is almost inconceivable that a tunnel 3,700 or 4,500 feet through solid rock will be or

ever was intended to be extended to such claims to reach a depth of only sixty-four feet. It is not made to appear how the sinking of the shaft on the one claim tended to discover or explore mineral on the other claims 3,000 to 4,000 feet away, or facilitated its extraction therefrom. The physical features and relative positions of gulches and mountains render that impracticable, if not impossible.