[Civ. No. 4488.   First Appellate District, Division Two.—May 3, 1923.]

## A. P. RING et al., Appellants, v. UNITED STATES GYPSUM COMPANY (a Corporation), Respondent.

[1] Conflicting Claims—Placer Mining Locations—Group Working —Evidence—Findings.—In this action under section 738 of the Code of Civil Procedure to determine conflicting claims to certain placer mining locations, and in which it was agreed that all locations were in proper form and that in each case discovery of gypsum was made, the trial court was justified in determining from the evidence that defendant had not abandoned the claims in question but had worked them and others as a group and that, during the years in question, labor expended by it tended directly to the development and benefit of each and all of the claims and to facilitate the extraction of mineral therefrom.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. R. McNamee and Charles L. Allison for Appellants.

Gibson, Dunn & Crutcher and Lawrence L. Otis for Respondent.

NOURSE, J.—This is an action under section 738 of the Code of Civil Procedure to determine conflicting claims to ten placer mining locations near Amboy, San Bernardino County. The claims to which plaintiffs assert title are described as Crater Nos. 1 to 10, inclusive, and the claims to which the defendant asserts title, and which covered substantially the same ground, were also ten in number and separately named. It was agreed that all locations were in proper form and that in each case discovery of gypsum was made. The complaint and answer are in the usual form for actions of this nature and no question arises upon the pleadings. Judgment was rendered in favor of the defendant, from which plaintiffs appeal upon a bill of exceptions. The

1. Abandonment and forfeiture of mining claims, note, 87 **Am. St. Rep.** 403.

only attack upon the judgment is that the findings of fact of the trial court were not supported by the evidence.

Briefly, the facts are that a portion of the ground covered by the land in dispute was originally located by Marcus Pluth and others and that in 1905 he sold his interest therein to defendant's predecessor; that the defendant and his predecessors in interest have occupied the land continuously since 1905, together with some ten or twelve other adjoining claims, all of which were worked under a general system of group development requiring a large annual expenditure of money aggregating in the year 1919 the sum of over $18,000 and in the year 1920 the sum of over $141,000. On September 17, 1920, the plaintiffs, acting through the same Marcus Pluth, went upon the land in dispute and posted notices of location for their ten separate claims. They then commenced this action to quiet title to the property upon the theory that it had been abandoned by the defendant.

[1] The trial was had without a jury and at its conclusion the trial court made its findings of fact and conclusions of law wherein it was found: "That all and every of defendant's claims comprise the group of said Amboy Mining Claims, and that all of said group of mining claims, and each of them, were worked, operated, developed and improved in common as an entire group of claims for more than five (5) years prior to the commencement of this action, and that especially and particularly during the years 1919 and 1920 they were so worked, operated, developed and improved as a group of mining claims, and that sums of money amounting in the aggregate to $18,989.76 during the year 1919, and $141,825.29 during the year 1920, were expended for work, labor and improvements thereon tending directly to the development and benefit of each and all of said claims and to facilitate the extraction of mineral therefrom."

The main ground of appeal is that this finding of fact is not supported by the evidence. At the outset it should not be necessary to do more than call attention to the fact that the record presents such a wide conflict in the testimony offered that, if any evidence appears therein which supports the finding of the trial court, that finding should not be dis-

turbed on this appeal. It is the theory of respondent's case that from the period of 1905 until 1920 it had continuously worked these properties under a general system of group development, and that, although during the years 1919 and 1920 work may not have been done on each of the separate ten claims involved in the litigation, sufficient work was done under the system of general development to avoid a forfeiture of the claims under the law. The respondent having shown that it had the right to possession of the property through valid locations, the burden of proof was upon the appellant to show that the respondent's right had been abandoned or forfeited. The respondent offered in evidence its proof of labor duly sworn to and filed as required by law, wherein it was shown that a sum of money sufficient to meet the legal requirements had been expended upon the claims in dispute. In addition to this, the testimony of its general superintendent was in part as follows: ''Q. How much work was done on the western part of the group as and for assessment work, if you know, in 1919? A. Well, I could not say just how much was done in 1919. Q. You mean you can not segregate it? A. No, I could not say; I don't know. I know that every year we were in operation we worked the south deposit somewhere. A great many times we hauled up with teams and so forth, a great amount of material to run through as a test. In the first place we ran into difficulties of salt in the south deposit in originally starting out, and we hadn't any way to overcome it at the time, which was the cause of our moving our track from there to the east deposit. We afterwards put in another system in the mill by which we could clean this gypsum, and we hauled up many tons and run through as tests to see if the system would clean that south deposit. Q. Was that done at various times? A. Done very near every year that I have any recollection. Q. Were you finally able to eliminate the salt? A. To a very large degree; that is less than one-half of one per cent. Q. That makes the produce merchantable, usable? A. Yes, sir. Q. Were there any intentions at any time to abandon those claims on the west? A. Never. The real intention was probably to go back to those claims, because the gypsum was cleaner and in greater bodies than these they have got now. Q. Well, in general

working as a group, you included all the claims? A. Yes, sir.''

In explanation of this testimony it should be added that the ten claims in dispute lay directly south of the mill which respondent operated on the ''Holdtite'' claim and that they lay partly west and partly south of the second mill which the respondent operated upon the ''Enterprise No. 3'' claim; that during the latter part of the period in question the greater amount of gypsum was taken from the ''Enterprise No. 3'' and that when the witness mentioned the south deposit he referred to the deposit upon the claims here in dispute. It was also shown that the deposit of gypsum lay directly beneath the surface, which was a thin coating of mud and silt, the entire territory being the bed of an old lake which had completely dried and disappeared. The method of operations was to plow or scrape the surface from the mineral deposit and then to load the mineral into trucks by means of scrapers attached to tractors. The mineral deposit was then hauled to the mill, where it was cleaned and dried. It is claimed, with apparent good reason, by the respondent, that this process of cleaning the dirt from the mineral deposit at the mill was a substantial and important part of extracting the mineral from the ground. That is to say, that the gypsum lying in a solid mass did not require any mining operations such as are necessary in the ordinary quartz or placer mining for gold or silver or other similar minerals, but that all that was required was to carefully clean from the mineral deposit the surface layer of dirt. In accordance with this theory it was then shown that numerous roads had been constructed leading from the various claims to the mill operated by the respondent, some of which were made specially for the accommodation of tractors, and that this work was a necessary part of the development of the various claims for the purpose of facilitating the extraction of the mineral therefrom.

Upon this evidence, as we have said, the trial court found that labor expended by the respondent tended directly to the development and benefit of each and all of said claims and to facilitate the extraction of mineral therefrom. This finding was plainly on a question of fact, which the trial court was required in the first instance to determine. (*Big Three Mining & Milling Co.* v. *Hamilton,* 157 Cal. 130, 135 [137

Am. St. Rep. 118, 107 Pac. 301]; *Yreka Mining & Milling Co. v. Knight,* 133 Cal. 544, 549 [65 Pac. 1091].)

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 2, 1923.