**Kenneth N. SILLIMAN, et al., Plaintiffs and Appellants,**

v.

**Rex T. POWELL, et al., Defendants and Respondents.**

**No. 17054.**

Supreme Court of Utah.

March 2, 1982.

Duane A. Frandsen, Price, A. J. Coffman, Moab, for defendants and respondents.

HOWE, Justice:

Plaintiffs commenced this action to quiet title to certain unpatented lode mining claims in Grand County, Utah, and to recover damages for slander of title and for the removal of ore from some of the claims. Defendants counterclaimed to have title quieted in them. From a judgment in favor of the defendants based on a finding of plaintiffs' failure to meet the statutory assessment work requirement, plaintiffs appeal attacking that finding.

Plaintiff Silliman is the successor in interest of Utah Alloy Ores to approximately 84 mining claims and one millsite in the Yellow Cat mining district in Grand County. These claims are of value for their uranium and vanadium content. They stretch over a distance of approximately four miles and include groups of multiple claims that are generally adjacent or connected by at least one point of reference. Silliman first began performing assessment work on the claims in 1948 while associated with Utah Alloy Ores and since the early 1950's has been involved with their development. During the period from 1948 to 1972 there was continuous mining activity on them.

The dispute in this case arose as a consequence of the location by defendants in the years 1974 to 1978 of claims overlying those of plaintiffs. During that period the Powell defendants located a total of 97 claims, which conflicted with all but approximately 12 of plaintiffs' claims. Also conflicting with plaintiffs' claims were 24 claims located by the defendants Teares or their predecessors in interest between June 1977 and May 1978. The defendants Rowes and Penromers, who were also parties to this lawsuit, entered into separate settlement stipulations with plaintiffs, and their claims are not at issue here.

Although there was testimony that the required location monuments and identifying notices were no longer visible on plain-

John Preston Creer, Brent D. Ward, Brian T. Stewart, Salt Lake City, for plaintiffs and appellants.

tiffs' claims, this circumstance was apparently not a factor in the trial court's decision. Rather, the judgment was based on the conclusion that the assessment work done by plaintiffs was insufficient to meet the federal requirement that $100 worth of labor be expended yearly to benefit each claim held under a valid location.[1]

The major portion of the work claimed as assessment work by plaintiffs was done by Silliman or his son (and on one occasion by a third party) with a Caterpillar D–6 B bulldozer. Silliman calculated the value of his operation of the bulldozer at $50 per hour, determined on the basis of the cost of another operator working under his direct supervision. The figure was disputed by defendants who introduced evidence that a reasonable charge for such work would have ranged from $15 per hour in 1972 to $40 in 1979. Silliman described his work as stripping or removing the overburden from potential ore bodies, constructing drill sites for future drilling, preserving existing mine workings, maintaining and improving existing roads, and constructing new roads "on or about" plaintiffs' claims. He asserted that the roads facilitated the development and mining of the claims by providing access to the claims and the ore bodies thereunder for drilling rigs, ore trucks and other necessary vehicles.

Broken down by pertinent assessment years, the following amounts of work were claimed in testimony by Silliman:

For the assessment year ending September 1, 1973, he testified that he spent 212 hours working on the claims for a value of $10,600 which exceeds the minimum amount of $8,400 that would be necessary to protect all 84 claims from relocation. The Powells located 20 claims in April 1974 which conflicted with 8 of plaintiffs' claims.

For the year ending September 1, 1974, Silliman claimed to have worked 203 hours on the claims for a value of $10,150. In the following year the Powells located 68 claims that conflicted with plaintiffs' claims based on their belief that plaintiffs had not done sufficient assessment work.

For the year ending September 1, 1975, Silliman testified he did 212 hours of work valued at $10,600. Again, based on alleged deficiencies in the assessment work, the Powells the following year located nine additional claims which conflicted with 22 of plaintiffs' claims.

For the year ending September 1, 1976, Silliman claimed he built additional drill sites and performed road maintenance, spending 227 hours, and did drilling work that continued into the next assessment year. The Teares located claims in 1977 which conflicted with eight plaintiffs' claims. Additional Teares claims were located the following year, after plaintiffs allegedly performed 210 hours in assessment work on portions of their claims. Included in the work claimed for the year ending September 1, 1977 was 1,060 feet of drilling which penetrated ore bearing formation.

Plaintiffs also introduced evidence of assessment work done in the year following the disputed period as probative of their good faith in continuing to develop their mining claims.

As to the road work done by Silliman, he testified that his primary concern was to maintain not every road on the property but those main roads that were necessary for the transporting of drills and other equipment to the claims. Photographs were introduced by defendants that showed a lack of maintenance, e.g., sod, rocks and sagebrush were in the roadways that were allegedly cleared and maintained by Silliman. Silliman nevertheless insisted that he had performed sufficient assessment work during the period of time in question which

---

1. The applicable law is 30 U.S.C.A. § 28, which provides:

> ... On each claim located after the 10th day of May 1872, and until a patent has been issued therefor, not less than $100.00 worth of labor shall be performed or improvements made during each year.... [U]pon failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made ...

was intended to benefit all of his claims pursuant to a general plan for their development.

The trial court found against the plaintiffs and quieted title in the defendants to all their mining claims. Plaintiffs appeal contending that (1) the trial court erred by misapplying the standards of law applicable to the common development of associated mining claims; (2) the trial court erred in allocating the burden of proof as to the performance of the assessment work; and (3) the trial court erred in not applying the doctrine of apportionment.

We are unable to determine whether any of the foregoing assignments of error have any validity because the findings of fact are couched in ambiguous, indefinite and conclusory terms that do not allow us to determine whether the trial judge correctly applied the law to the facts.

In its Finding of Fact No. 13 the trial court found that:

> $100.00 of labor was not performed nor improvements made as required by 30 U.S.C.A. Section 28, on plaintiffs' claims involved in this action which conflict with defendants POWELLS' claims as set forth in Exhibit B for the assessment years ending September 1, 1973, 1974, and 1975. There was also no resumption of assessment work between the end of the aforementioned assessment years and the date of location of the claims of defendants POWELLS set forth in Exhibit B.

Similarly, in Finding No. 14, 15 and 16, the court found that "plaintiffs also failed to do sufficient assessment work of $100.00 for each mining claim involved in this lawsuit, which conflicts with the mining claims of defendants TEARES . . . defendants ROWES . . . and defendants PENROMERS . . . for the assessment years ending September 1, 1976 and 1977." These findings are followed by a conclusory finding, Finding No. 17, which states:

> At the time each of the claims of defendants was located, the ground areas involved had reverted to the status of public domain and were open to relocation by

reason of plaintiffs' failure to do sufficient assessment work to the amount of $100.00 for each of said mining claims owned by plaintiff.

■ These findings are not explicit and free from ambiguity. While they state that the required assessment work was not done on *each* of the claims, they leave us in doubt as to whether sufficient work was done on *any* of the 84 claims or whether any work at all was done. Even if we were to assume that they mean that the required assessment work was not done on any of the claims, the validity of this assumption is obscured by Finding No. 18 which states that "[T]he court is unable to make a finding as to the value of assessment work performed by plaintiff on any particular claim or group of claims for any of the assessment years in question." We are not sure if this means (1) that the court simply was unable to find any value at all to plaintiffs' work, (2) that the court found no work was done at all, or (3) that the court was truly refraining from making any finding on the subject of the value of the plaintiffs' work. As the determiner of fact, the trial court is required to make findings on all material issues. *Romrell v. Zions First National Bank*, Utah, 611 P.2d 392 (1980); *Rucker v. Dalton*, Utah, 598 P.2d 1336 (1979).

There is another problem with the indefiniteness of the findings. Finding No. 18 states that " . . . the assessment work claimed by plaintiffs to satisfy the annual assessment work requirement is not of such character or amount to benefit the entire group of plaintiffs' claims to the extent of $100.00 for each claim." This finding contemplates too high a requirement. Plaintiffs must only do $100.00 worth of work on those claims which were located over by the defendants in the following year. For example, in the first year involved here defendants Powells located 20 claims. It would only be on the plaintiffs' eight claims underlying these 20 claims that the required assessment work would have to be done in the preceding year in order to defeat the relocated claims of defendants—not $100.00 worth of work on all 84 claims of plaintiffs.

Although the defendants vigorously attacked the credibility of plaintiffs' evidence as to the extent and value of their assessment work, the trial judge was apparently of the opinion that plaintiffs had indeed performed some work since he wrote in his memorandum decision that he was "adopt[ing] a theory of the case which most completely, as far as practical, harmonizes the testimony of all the witnesses, thusly [sic] not requiring the Court to reject as intentionally false any of the testimony." Yet, in the findings of fact the trial court contradicts that statement by finding that plaintiffs "reconstructed" their testimony on assessment work after this suit was filed.

Most of the assessment work claimed by plaintiffs was roadwork. In his memorandum decision the trial court indicated that the roadwork did not benefit all the claims, but leaves us in doubt as to whether the roadwork benefitted any of the claims. Other work claimed performed by plaintiffs was performed on one or more of the 84 claims. As will be discussed hereafter, with respect to such work the burden of proof was on the defendants to show that the work did not benefit that claim where it was performed. The work included removing overburden, drilling, preparing drilling sites and preserving existing mine workings. No specific finding was made as to the extent or value of any work done by the plaintiffs on their claims.

■ In view of the indefiniteness and ambiguity in the findings as well as the conflict among them, we remand this case to the trial court to make and enter definite and clear findings of fact and to make any resulting amendments to the conclusions of law and judgment in accordance with the principles of law discussed in this opinion as to:

1. The nature of and extent of the work done in each assessment year by plaintiffs.
2. The value of such work.
3. Where the work was performed.
4. What claim or claims the work benefitted.

The plaintiffs are entitled to clear and definite findings of fact in order to determine whether in any of the pertinent years their work (if any is found) qualified under the law to save a claim from relocation by defendants.

To assist the trial court in applying the law to the clarified findings of fact, we now discuss plaintiffs' points of law raised on appeal.

Assessment Work and the Common Development of Associated Mining Claims

■ Once validly located on ground open to location under federal law, an unpatented mining claim may continue to be held by the original locators or their successors free of any interest asserted by those who subsequently attempt to locate the same area, provided the assessment requirements of 30 U.S.C.A. § 28 are met. The Supreme Court of the United States described the nature of the assessment requirement in *Smelting Co. v. Kemp*, 104 U.S. 636, 655, 26 L.Ed. 875, 882 (1881), as follows:

Labor and improvements, within the meaning of the statute, are deemed to have been had on a mining claim, whether it consists of one location or several, when the labor is performed or the improvements are made for its development; that is, to facilitate the extraction of the metals it may contain; though in fact such labor and improvements may be on ground which originally constituted only one of the locations, . . .

*Jackson v. Roby*, 109 U.S. 440, 444, 3 S.Ct. 301, 303, 27 L.Ed. 990, 992 (1883), also addressed the nature of the annual labor requirement "where work or expenditure in one of several claims held in common is allowed, in place of the required expenditure on the claims separately." In such circumstances, the Supreme Court stated, "the work or expenditure must be for the purpose of developing all the claims. It does not mean that all the expenditure upon one claim—which has no reference to the development of the others—will answer."

To determine whether adjoining claims are benefitted by work done on another, courts have required that the work be done pursuant to a general system "well adapted and intended to work several contiguous claims or lodes, and where such is the case work in furtherance of the system is work on the claims intended to be developed by it." *Chambers v. Harrington*, 111 U.S. 350, 353, 4 S.Ct. 428, 430, 28 L.Ed. 452, 454 (1884), affirming an appeal from this Court and quoting from *Mount Diabolo M. & M. Co. v. Callison*, 5 Sawyer 439. See also *Powell v. Atlas Corp.*, Utah, 615 P.2d 1225 (1980).

The meaning of the term "general system" was stated in *Nevada Exploration & Mining Co. v. Spriggs*, 41 Utah 171, 180, 124 P. 770, 773 (1912), as follows:

> That the work as it is commenced on the ground, is such that, if continued, will lead to a discovery and development of the veins or ore bodies that are supposed to be in the claims, or, if these are known, that the work will facilitate the extraction of the ores and mineral.

■ While a general plan must have a reasonable tendency to benefit the claim for which the work is asserted, a court will not substitute its judgment for that of the owner as to the wisdom of the method employed. *Miehlich v. Tintic Standard Mining Co.*, 60 Utah 569, 211 P. 686 (1922). Road work has often been sustained as valid assessment work. See, e.g., *Knight v. Flat Top Mining Co.*, 6 Utah 2d 51, 305 P.2d 503 (1957); *Doherty v. Morris*, 17 Colo. 105, 28 P. 85 (1891); *Sexton v. Washington Mining and Milling Co.*, 55 Wash. 380, 104 P. 614 (1909). In *Lind v. Baker*, 31 Cal.App.2d 631, 88 P.2d 777 (1939), the court found road work sufficient to satisfy the assessment work requirement where a private road, necessary for ingress to and egress from certain claims, had been washed out by a flood the previous year and the owner did substantial work on it and in addition worked in shafts and cuts in actual mining operations on the property. Road work that directly facilitates the extraction of minerals from claims clearly qualifies as assessment work.

The finding in *Lind* that the labor performed tended directly to further the development of all the claims and benefitted each of them was, as quoted from *Ring v. United States Gypsum Co.*, 62 Cal.App. 87, 216 P. 409, 411 (1923), "plainly on a question of fact, which the trial court was required in the first instance to determine." The court held that a reasonable inference drawn from the evidence by the trial judge cannot be upset on appeal because he might have drawn a contrary inference from the same evidence. See 2 Lindley on Mines, § 630 at 1555 (3rd ed. 1914), the determination of the adequacy of assessment work is normally a question for the trier of fact.

This Court recently addressed the role of the appellate court in determining the adequacy of assessment work in *Powell v. Atlas Corp.*, supra. There, it was stated that the findings and judgment of the trial court, based upon the whole evidence, are entitled to a presumption of validity and will not be disturbed if supported by substantial evidence. See also *Harrington v. Chambers*, 3 Utah 94, 1 P. 362 (1881).

### Burden of Proof

■ Plaintiffs contend that the trial court erred in its allocation of the burden of proof on the performance of the assessment work and failed to recognize the principle that the law does not favor forfeitures. This Court stated in *New Mercur Mining Co. v. South Mercur Mining Co.*, 102 Utah 131, 137, 128 P.2d 269, 272 (1942), "[O]rdinarily the party claiming the forfeiture of a title must both plead it and establish it by clear and convincing proof." See also *Utah Standard Mining Co. v. Tintic Indian Chief Mining & Milling Co.*, 73 Utah 456, 274 P. 950 (1929). The ultimate burden of persuasion is upon a junior locator to show that insufficient assessment work was done on the claims in question and that they were therefore open to relocation.

■ On the other hand, plaintiffs concede that they have the burden to prove by competent evidence that work performed *outside* the boundaries of any claim forming

part of a group being commonly developed fulfilled the requirements of the law and was both intended to develop the claim and did actually tend toward its development. *New Mercur*, supra.

## Apportionment Doctrine

Plaintiffs' final contention is that the trial court erred in failing to apply the doctrine of apportionment set forth in *Utah Standard Mining Co. v. Tintic Indian Chief Mining & Milling Co.*, supra. There we said:

> There is no principle of law that we are aware of which asserts that, if the owner of a group of 22 claims undertakes to do the annual work for that group, as a consolidated group, and performs only the labor necessary for 9 claims, he loses the benefit of that work on 9 claims, provided it is in fact performed on one of the 9 claims in such a way as to benefit the remaining 8, as well as the one upon which performed. [73 Utah at 460, 274 P. at 951.]

 The Court further stated that if claimants "indisputably performed the work on this claim, they cannot lose the benefit of it." In other words, where assessment work is actually performed on a particular claim of a senior locator, the burden is upon the one asserting a forfeiture to prove a failure to meet the statutory assessment requirement as to that claim.

It is true that the federal assessment requirement of $100 of assessment work per claim per year places a minimal burden upon a holder of an unpatented mineral claim. It is reasonable to require compliance with the rule that the annual labor must actually confer a benefit upon the claims held by a locator, i.e., that the work tends to develop the claims by facilitating the extraction and removal of ore. When there is an attempt at compliance, however, the law should be construed liberally to prevent a forfeiture. See *Utah Standard*, supra, quoting from *Emerson v. McWhirter*, 133 Cal. 510, 65 P. 1036 (1901); *Miehlich v. Tintic Standard Mining Co.*, supra.

Remanded to the trial court for further proceedings consistent with this opinion. No costs on appeal are awarded.

HALL, C. J., and STEWART and OAKS, JJ., concur.

MAUGHAN, Justice, heard the arguments but died before the opinion was filed.