[No. 4663.]

### HAIN ET AL. v. MATTES.

1. **Adverse Suits—Pleading.**

   In an adverse suit it is not necessary to allege in the complaint that the adverse claim was filed in the land office within sixty days of publication.

2. **Adverse Suits—Pleading—Practice—Waiver.**

   In an adverse suit the objection that the complaint was not filed within thirty days after the filing of the adverse is waived by going to trial without having raised such question by specially pleading it in a demurrer or answer.

3. **Mining Claims — Development Work — Tunnels — Contiguous Territory.**

   The annual assessment work required to be done in the development of a mining claim may be done in a tunnel if the work so done tends to develop and benefit the claim and is done for that purpose, regardless of the contiguity or noncontiguity of the territory from the portal of the tunnel to the claim sought to be developed, and where the portal of the tunnel is not on the claim to be developed or a contiguous claim, it is not necessary that the owner of the claim to be developed should own a continuous strip of ground from the portal of the tunnel to the exterior boundaries of the claim through which it is proposed to drive the tunnel.

4. **Practice—Instructions—Indefiniteness.**

   An objection that instructions are indefinite and uncertain cannot be raised by a party who failed to request more specific instructions covering the points.

*Appeal from the District Court of Ouray County: Hon. Theron Stevens, Judge.*

Messrs. HENRY & SIGFRID and Mr. T. W. EMER-SON, for appellants.

Messrs. STORY & STORY and Mr. THOMAS Y. BRAD-SHAW, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court.

This is a suit in support of an adverse claim filed by the Senator Beck lode mining claim against the Dutch Girl lode mining claim. The Senator Beck had judgment.

In the discussion of this case we shall call the appellants the Dutch Girl and the appellee the Senator Beck.

The Senator Beck is many years the senior location.

No question is raised involving the validity of the location of either claim, provided that at the time of the discovery and location of the Dutch Girl the land was subject to location by reason of the failure to perform the annual assessment work for the Senator Beck for the year 1898.

Preliminary to a discussion of the main question we will dispose of the contention that the complaint does not state facts sufficient to constitute a cause of action in that it does not allege that the adverse claim was filed in the United States land office and suit in support thereof commenced within the time provided by section 2326, Rev. Stats. U. S.

These precise points were ruled in *Penn. Mining Co. v. Bales,* 18 Colo. App. 108, and *Rawlings v. Casey,* 19 Colo. App. 152, to the effect that it was unnecessary to allege in the complaint that the adverse claim was filed in the land office within the sixty days of publication, and that defendant waived his objection, if one, that the complaint was not filed within thirty

days after date when the adverse was filed by going
to trial without having raised such question by spe-
cially pleading it in a demurrer or answer.

The questions presented here were raised for the
first time at the trial by a motion of the Dutch Girl
to exclude all evidence.

With the rulings made by the court of appeals in
the cases cited we are in accord.

The pivotal question in this case is, was the an-
nual assessment for the year 1898 performed within
the surface boundaries of the Senator Beck, or if the
work was performed elsewhere, was it intended as an
annual assessment upon the claim and of such char-
acter as would inure to the benefit thereof?

There was evidence that in 1898 a shaft had been
sunk within the surface boundaries of the Senator
Beck for the benefit of the owners of the property;
that this work was not worth $100 (as testified by
the person who performed the same) and that it was
worth $120 to $140 (as testified by two disinterested
witnesses); that previous to and during the year 1898
the owner of the Senator Beck was driving what is
known as the Swamp Angel tunnel, which had its
portal on the Swamp Angel lode, the property of such
owner; that such tunnel was driven with the intention
of developing the Senator Beck and other claims;
that work upon such tunnel tended to the development
of the Senator Beck and inured to its benefit; that
$2,400 worth of work was done in the tunnel during
the year 1898; that this work was done in the tunnel
for the benefit of the Senator Beck and thirty-one
other claims; that the Swamp Angel tunnel continued
would eventually reach the Senator Beck.

The jury was instructed that it was not necessary
that the annual assessment should be done within
the boundaries of the claim; that such work might be
done in a tunnel off the claim when such tunnel was

driven by the owner for the purpose of developing the claim, and if it was found that the plaintiff (Senator Beck) was running a tunnel for the purpose of developing the Senator Beck and that the work performed therein tended to develop such claim, such work is in law considered the equivalent of assessment work within the boundaries of the claim.

The last paragraph of this instruction is: ''And the court further instructs you that contiguity of territory is not necessary in order to have such work apply as an assessment.''

Exception was taken to and error is assigned upon the paragraph quoted.

As we understand the contention of counsel, it is that the owner of a claim cannot develop his claim by a tunnel, or apply work in such tunnel as an assessment on the claim, unless he owns a continuous strip of territory from the portal of the tunnel to the exterior boundaries of the claim upon which it is sought to apply the tunnel work as assessment work.

Pertinent statutory provisions are:

'' * * * On each claim located after the 10th day of May, 1872, and until patent has been issued therefor, not less than $100 worth of labor or improvements shall be made during each year, * * * but when such claims are held in common, such expenditure may be made upon any one claim.''—Section 2324, Rev. Stats. U. S.

''That section 2324 of the Revised Statutes be and the same is hereby amended so that when a person or company has or may run a tunnel for the purpose of developing the lode or lodes owned by such person or company, the money so expended shall be taken and considered as expended on such lode or lodes.''— Act of Congress Feb. 11, 1875, 18 U. S. Stats. at Large 315.

One end sought by the acts of congress above quoted was the development of the mineral resources of the country, and to the accomplishment of this end the appropriator of public mineral domain was required to expend not less than $100 in labor or improvements upon or for the development of each claim in each year. Section 2324 required this expenditure to be on each claim, subject to the exception that when claims were held in common such expenditure might be made upon one claim, clearly indicating that it was the intention of congress to provide a method for the economical development of a group of contiguous claims. The amendment of 1875 provided for the development of one or more claims by means of a tunnel, which method of development was not provided for by section 2324 unless such tunnel was on one of the claims held in common and which comprised a group of contiguous claims. A construction which would limit the right granted by the amendment of 1875 to a tunnel constructed or driven on a claim or claims contiguous to each other would destroy the right granted by the amendment, as such right was granted by section 2324. In other words, if work done in a tunnel cannot be applied as assessment work on a mining location unless the party doing the work in the tunnel is the owner of a continuous strip of territory through which a tunnel may be driven from the portal thereof to the claim sought to be improved by tunnel work, the amendment of 1875 is meaningless and of no force and effect.

Section 2324 granted the right to perform the assessment upon one claim for the benefit of claims held in common or a group of contiguous claims, and there is no manner of securing a continuous strip of territory through or over mineral lands except by locating a group of contiguous mining claims or by means of a tunnel site location.

It is conceded that there is not a syllable in either section 2324 or the amendment of 1875 in regard to the contiguity contended for, but the same is sought to be established by a construction placed upon the cases cited which would, in our judgment, establish the principle by judicial legislation.

A careful analysis of the cases cited in support of the contention of the Dutch Girl, keeping in mind the statutory provisions above quoted, will demonstrate that they are. not in point.

We cannot review all of the cases, but will select those which seem to be strongest in support of the proposition contended for and point out the distinction between the cases cited and the case under consideration, at the same time calling attention to statements and expressions in the opinions which are opposed to the proposition in support of which the cases are cited.

The first case cited is *Mt. Diablo Mining Co. v. Callison,* 4 Sawyer 439, 9886 Fed. Cases. As stated by Judge Hillyer, who wrote the opinion, the question before the court was: "Whether the plaintiff in the year 1877 failed to comply with the condition as to labor on the Dinero claim stated in section 2324, Rev. Stats."

The facts were: The plaintiffs ·owned three mining claims, the Dinero, Mt. Diablo and Peru, all of which adjoined each other. No question of the contiguity of territory was involved. No mention of the amendment of. 1875 was made and consequently no construction thereof could have been announced. In the course of the opinion it is said: "Work done outside of the claim or outside of any claim, if done for the purpose and. as a means of prospecting or developing the claim, as in the case of tunnels, drifts, etc., is as available for holding the claim as if done within the boundaries of the claim itself. One gen-

eral system may be formed well adapted and intended
to work several contiguous claims or lodes, and when
such is the case, work in furtherance of this system
is work on the claims intended to be developed by it.''

*St. Louis Co. v. Kemp,* 104 U. S. 875, is cited. In
this case the question involved was the validity of a
placer patent which included a number of contiguous
claims amounting in all to 164.61 acres. Incident-
ally the court discussed the law applicable to assess-
ment on mining claims and in this connection uses
the following language:

''Labor and improvements, within the meaning
of the statute, are deemed to have been had on a
mining claim whether it consists of one location or
several, when the labor is performed or the improve-
ments are made for its development; that is, to facili-
tate the extraction of the metals it may contain,
though in fact such labor and improvements may be
on ground which originally constituted only one of
the locations, as in sinking a shaft, or be at a distance
from the claim itself, as where the labor is performed
for the turning of a stream or the introduction of
water, or where the improvement consists in the con-
struction of a flume to carry off the debris or waste
material.''

There is nothing in the statement of facts or the
discussion of the court to indicate that the amend-
ment of 1875 was under consideration in this case.

*Jackson v. Roby,* 109 U. S. 440, decided that the
extension of a flume upon a placer claim and the use
of such claim for dumping purposes was not such
improvement of the claim as contemplated by sec-
tion 2324, although the claim so used and other
claims were held in common.

The amendment of 1875 was not in any manner
before the court, and the statement of facts clearly

indicates that this case was decided upon a construction placed upon section 2324 alone.

In *Chambers v. Harrington,* 111 U. S. 350, the defendant owned three adjoining claims which were being developed by a shaft on one of the claims. The plaintiff claimed a portion of the territory of one of the claims other than the one upon which the shaft was located, on the ground that the claim had been forfeited by failure to work the annual assessment on the claim. It was held that work done in the shaft had a tendency to develop the claim relocated and was sufficient to hold it. The language of the opinion clearly indicates that the case came within section 2324. After stating the substance of the amendment of 1875, the opinion proceeds:

"We are unable to see that it—the amendment— affects the character of other work to be done or improvements to be made according to the law as it stood before, *except as it gives a special value to making a tunnel.*"

This quotation is the only reference in the opinion to the amendment of 1875 and the only construction placed by the court upon such amendment.

*De Noon v. Morrison,* 83 Cal. 168, involved placer mining claims adjoining each other and the question of the contiguity of territory was not before the court.

*Hall v. Kearney,* 18 Colo. 505, decided that work done upon a patented claim one of a group of contiguous claims, if in fact done for the development of the claim, may be considered assessment work for such claim notwithstanding the fact that it was done outside of the exterior lines of the claim. The court says:

"Did the work where done tend to the development of the Randolph and Roscoe claims and was it in fact performed for the benefit of these locations,

are the controlling questions to be determined, and it is immaterial whether the improvement is upon patented or unpatented property, except as this may throw light upon the intention of the parties in doing the work.''

*Gird v. California Oil Co.,* 60 Fed. 531, involved the application of section 2324 to placer locations of oil lands and in nowise involved a construction of the amendment of 1875.

*Royston v. Miller,* 76 Fed. 50, was a suit in equity for an accounting and for partition of a group of mining claims known as the ''Kingston Mines'' and the ''Irvine Tunnel,'' run for the purpose of prospecting and developing the mining claims. The group consisted of four claims known as the Provider, the Morris, the California and the Chicago. The first three were contiguous. The Chicago was separated from them by the Victorine, a patented mining claim owned by other parties. The question of forfeiture of the rights of some of the parties in a portion of the property arose upon the trial, one side contending that work in the Irvine tunnel for the year 1892 was sufficient to hold the four claims of the group, including the Chicago, which, as stated, was separated from the other claims by a patented claim. Judge Hawley, in an oral opinion, held that work done upon the Irvine tunnel in 1892 was wholly insufficient to constitute a compliance with the provisions of section 2324 as to the amount of annual assessment to be performed on the Chicago claim, and that such work was only sufficient to hold the three mining claims that were contiguous, citing *Chambers v. Harrington, supra,* and *Mining Co. v. Callison, supra,* in support of this conclusion.

It does not appear from the statement of facts contained in the opinion that the tunnel was either on or off the group of contiguous claims. The

amendment of 1875 was not discussed in the opinion which, as to the point here under discussion, is based entirely upon the cases cited, which cases, as we have shown, did not involve the question of contiguity or noncontiguity of territory under the amendment of 1875.

It further appears from the opinion that the discussion of this particular point was not necessary to a decision of the case, and therefore the statement of the court in this behalf might be treated as *obiter dictum*.

Further discussion of the cases cited would unnecessarily prolong this opinion. Suffice it to say that we have examined all of them and that the statement of facts in each case shows that the mining claims involved were contiguous and that the question here presented was not under discussion or decided in any of them.

Our investigation of the cases cited also discloses the fact that expressions may be found in some of them which seem to support the proposition to which they are here cited.

"The language of the court is always to be understood by applying it to the facts of the case decided. That which seems to be general and of universal application has, in reality, often a limited application; and so the words of truth and utterances of law, undeniable in the case wherein they are spoken, become the parents of error and false doctrine."—*Branch v. Mitchell,* 24 Ark. 439.

Applying this rule to all the cases cited, we unhesitatingly say that no one of them is an authority in support of the proposition to which it is cited.

This court has decided that labor performed by the owner of a claim in constructing a wagon road, a small part of which was within the boundary of the claim, for the purpose of better developing the claim,

may be treated as a compliance with the law relating to annual assessments thereon.—*Dougherty v. Morrison*, 17 Colo. 105.

If labor performed upon a wagon road outside the boundaries of the claim or "outside of any claim" (Mt. Diablo case, *supra*) or "at a distance from the claim itself" (*St. Louis Co. v. Kemp, supra*) or "upon a patented claim" (*Hall v. Kearney, supra*), may be held to be a compliance with the law relating to annual assessment work, work done in a tunnel for the purpose of developing the claim and which has a tendency to develop it may be so considered regardless of the contiguity or noncontiguity of territory from the portal of the tunnel to the claim sought to be developed.

The true test to be applied is, does the work benefit or tend to benefit the claim, and was it done for the purpose of developing the claim?

The fact that the territory between the tunnel and the claim to be developed is vacant and unoccupied or owned by another person becomes important only in so far as that fact, if it exists, may have a bearing upon the ultimate question of fact as to whether the tunnel does or does not tend to develop the claim, which question of fact must be determined by the jury under proper instructions.

Our conclusion is that there was no error in the instruction.

Complaint is made that other instructions were indefinite and tended to mislead the jury.

It is possible that, standing alone, some of the instructions are subject to this criticism, but, considered as a whole, the instructions fairly and fully presented to the jury the legal principles applicable to the evidence.

If more specific instructions had been desired upon any of the points involved, request therefor

should have been made. This was not done. Therefore complaint that the instructions were indefinite and uncertain cannot be made by the party failing to request instructions covering the points.—*M. & M. Co. v. Prentiss*, 25 Colo. 4, and cases cited.

It is sufficient to say, that the court did not err in sustaining objections to questions on cross-examination relating to the work done on the Senator Beck in 1896 and 1897, as such evidence was immaterial. The evidence admitted of the value of work done in the Swamp Angel tunnel and the intention with which such work was done, was competent and admissible.

Other exceptions taken and urged here were either not well taken or concern immaterial matters.

The judgment will be affirmed.          *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GUNTER concur.