## GODFREY v. FAUST.

The construction of a tunnel on property outside of a mining claim, made solely with reference to the development of the claim, is work on the claim, available as annual development work thereon.

The admission of incompetent testimony in a case tried by the court is no ground for reversal, unless it appears, after disregarding the same, that there is a preponderance of evidence against the court's finding.

Fuller, P. J., dissenting in part.

(Opinion filed, Nov. 29, 1905.)

On rehearing. Denied.

For former opinion, see 18 S. D. 567, 101 N. W. 718.

FULLER, P. J. Our former decision of this appeal, now before us on rehearing, is reported in 18 S. D. 567, 101 N. W. 718, where the facts are fully stated, and it is held, upon conflicting evidence, and independently of certain testimony claimed to be incompetent and erroneously admitted, that the trial court was justified in finding that during the year 1900 the required amount of assess-

ment work had been done on or for the benefit of the Dave and Faust lodes, the two unpatented mining claims in controversy. With our conclusion that all necessary work may be done by one having a contract with the locator for the purchase of his property, no fault is found, but counsel for appellant forcefully combat the doctrine that it may be presumed, under the circumstances disclosed by the record, that the trial court disregarded incompetent testimony introduced at the trial of this case, which they maintain should be controlled by Starkweather v. Bell, 12 S. D. 146, 80 N. W. 183, where the opinion justifies the following headnote: "Where the evidence is conflicting, the admission over objection of incompetent testimony, which is material, and, if believed, is conclusive of the issue, is prejudicial error, although the cause is tried to the court without a jury." The controverted work done during the year 1900 within the boundaries of these unpatented claims is estimated by appellant's witnesses to be of the value of $5, while respondent's witnesses testify that such work was worth more than $200, and consequently sufficient to answer the requirements of the mining law.

The undisputed testimony, which appellant claims was erroneously admitted, to his great prejudice, is to the effect that at an expense of $1,145, and without the consent of the owner, the corporation holding the contract to purchase the claims in dispute excavated a tunnel through a patented lode lying between its own mining property and the claims in controversy. Moreover, that it constructed a mill upon its own property at an expense of $2,000, and expended more than $200 in the employment of watchmen, who guarded the interests of such corporation continuously from September 6, 1900. Over the objection that the testimony relative to this ditch or tunnel on the Gustin property was incompetent, because the ground was neither patented nor under control of the corporation doing the work, and, also, that the Faust and Dave lodes are not contiguous to the Minerva claim, upon which the mill is situated, respondent was permitted to testify as follows: "I am familiar with these drifts. You enter the Minerva mine by an inclined tunnel, entering at the rear and near the top of the mill. More than three or four hundred feet in that tunnel there is a cross-cut

going east towards the Faust lode across the Gustin claim. The Gustin is the only intervening claim between the Minerva and Faust claims, and is about 220 feet wide. That cross-cut was opened up through old caves in 1900. The ore is a cement or conglomerate; occurs in a blanket formation lying on the slates, with a sandstone capping. This cross-cut was the best method of getting ore from the Faust and Dave to the Minerva mill, as it saves a very long drift. That tunnel or cross-cut, run in 1900, certainly tended to develop the Faust and Dave, even if it did not strike them; was the easiest method of developing these claims."

Without any further objection, except as to certain testimony relative to the employment of two watchmen, for the reason that the same did not tend to show annual representation work on or for the benefit of the Dave and Faust claims, the superintendent of the corporation holding the contract to purchase was thereafter allowed to go into all the particulars of such work as follows: "In 1900 we did, altogether, about $1,145 worth of work on the tunnel going from the main Minerva tunnel through the Gustin towards the Dave and Faust. The only object of that work was for the development of the Faust group, which included the Faust and Dave lodes. Mr. Vincent surveyed the work done in 1900. The 25 feet of tunnel testified to by him was new work. You might call it solid rock. It was caved just as solid as could be, and I had to use a great deal of timber. My engine and boiler and my engineers were employed at the same time to take away the debris, whatever we couldn't pull to one side. We run the 25 feet on the Faust lode in 1900. The work stopped about the latter end of August. The balance of the drift there was also run through caved material about six feet wide. It will average ten feet high. We used timber from 8 by 8 to 10 by 12 inches. There was from four, five, and six men at work beside the men in the mill. The reasonable value of that 25 feet run in the Faust lode, without the expense of the mill men, put it to $11 or $12, but if the mill is taken into consideration, which I had to keep running, I would say about $14 to $15. That work of going across the Gustin claim, cleaning out this old caved drift, tended to develop the Faust and Dave lodes. Beyond this 25 feet, where Mr.

Vincent didn't go any further in, we were close up to the corner stake, I should say, of the Two by Six lode. There is old work on beyond there, but he didn't survey. Our company purchased the Two by Six. It belonged to Mr. Barney and Martin, two personal friends of mine in Boston. This work that I did there had no reference to the Two by Six lode; It was done for the development and the future mining of the Faust property. We worked in and out through the Gustin six weeks—well, say two months, off and on, and perhaps longer."

The foregoing evidence being corroborated in every material respect by a witness subsequently called, and who also testified without objection, the facts stand uncontrovertedly established that work for the benefit and development of the Dave and Faust lodes to the value of $1,145 was done on the Gustin claim during the year 1900. Although it seems clear that the law relative to the required assessment work on the Dave and Faust lodes was substantially complied with by what was done on the Gustin property for their development, and that the evidence relative thereto was entirely proper, it might be assumed otherwise, without necessitating a reversal, because an objection to incompetent testimony is unavailing where, as in this case, other witnesses subsequently testify to the same state of facts without objection. City of Denver v. Teeter 74 Pac. 459; Nagle v. Fulmer, 98 Iowa, 585, 67 N. W. 369.

That the tunnel was driven on the intervening claim with the intention to benefit the lodes in controversy by facilitating the extraction of ore therefrom is undisputed, and appellant is in no position to effectively urge that a trespass was committed by the corporation doing the work. Consistent with what appears to be the prevailing rule, money expended in the construction of a wagon road across territory some distance from a mining claim sought to be developed was held to be a sufficient compliance with the law relative to the annual work required upon such claim, and the court say: "The parties substantially agree that no ordinary development work was actually done within the surface boundaries of the claim. It is, however, strenuously contended that the law in this particular was complied with by the construction of a wagon road up Cotton-

wood Gulch to the Great Republican and Little Mattie, adjoining claims. We do not hesitate to assert that labor performed by the owner of a mine in constructing a wagon road thereto for the purpose of better developing and operating the same may be treated as a compliance with the law relating to annual assessment work thereon." Doherty v. Morris, 17 Colo. 105, 28 Pac. 85. So, in Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 313, it was decided that the requirements of the statute as to annual assessment work had been sufficiently answered by labor done and improvements made some distance from the exterior lines of the claim to be benefited, and we quote from the opinion of the court as follows: "Labor and improvements, within the meaning of the statute, are deemed to have been had on a mining claim, whether it consists of one location or several, when the labor is performed or the improvements are made for its development—that is, to facilitate the extraction of the metals it may contain; though in fact such labor and improvements may be on ground which originally constituted only one of the locations, as in sinking a shaft, or be at a distance from the claim itself, as where the labor is performed for the turning of a stream, or the introduction of water, or where the improvement consists in the construction of a flume to carry off the debris or waste material." In Book v. Justice Mining Company, 58 Fed. 106, the governing statute is thus construed: "The mining laws of the United States require that not less than $100 worth of labor shall be performed or improvements made during each year upon every unpatented location. Labor and improvements, within the meaning of the statute, are deemed to be done upon the location when the labor is performed or improvements made for the express purpose of working, prospecting, or developing the ground embraced in the location. Work done outside of the limits of a mining claim for the purpose of prospecting or developing it is as available for holding the claim as if done within the boundaries of the location of the claim." To render work outside the boundary lines of a mining claim available as annual assessment work thereon, it is only necessary that it be within reasonable proximity thereto, and done for the purpose of its development. McGarrity v. Byington,

12 Cal. 425; Harrington v. Chambers, 1 Pac. 362; Mt. Diablo M. & M. Co. v. Callison, 5 Sawy. 439, Fed. Cas. No. 9,886; Kramer v. Settle, 1 Idaho, 485. From page 631 of Lindley on Mines we quote as follows: "The rule is well settled that work done outside of a claim or group of claims, if done for the purpose and as a means of prospecting or developing the claim, as in the case of tunnels, drifts, etc., is as available for holding the claim or claims as if done within the boundaries. One general system may be formed, well adapted and intended to work several contiguous claims or lodes, and, when such is the case, work in furtherance of the system, whether done within or without the claim or claims, is work on the claims intended to be developed." The headnote, fully supported by the opinion, in the case of Hall v. Kearney, 18 Colo. 505, 33 Pac. 373, is as follows: "Work which is in fact done for the development of a mining claim may properly be considered as assessment work for such location, notwithstanding the fact that it was performed outside of the exterior lines of such property. And it is immaterial whether the improvement is upon patented or unpatented property, except as this may throw light upon the intention of the party doing the work."

It being shown by competent and undisputed evidence, admitted without objection, that the tunnel through the Gustin property, costing $1,145, was made with reference to nothing but the development of the Dave and Faust lodes, and is not claimed as an improvement for any other purpose, it may be assumed, without deciding, that it was error to admit testimony relative to the Minerva mill site and the employment of the watchmen to protect such property. The granting of this rehearing enables us to correct an inadvertent expression in our former opinion, to the effect that the admission of incompetent testimony is no ground for reversal, unless it appears, after disregarding the same, that there is a preponderance of evidence against the findings of the trial court. In the case of Yankton B. & L. Ass'n v. Dowling, 10 S. D. 540, 74 N. W. 438, we say: "It is unnecessary to decide whether or not the court erred in receiving in evidence the judgment roll in the case of Yankton Building & Loan Association v. Dowling, for the reason that

every fact required to sustain the judgment below was either admitted by the pleadings or established by other competent evidence." Observing the important distinction between a record disclosing material facts admitted or established by competent evidence and one which fails to affirmatively show that the findings of fact are not sustained by the preponderance of evidence, we now adhere to the seemingly more reasonable doctrine that a reversal will not follow on account of the admission of incompetent testimony, where every fact necessary to sustain the judgment stands proved by 'other competent and undisputed evidence.

Applying such rule to this case, the record of which discloses no prejudicial error, the judgment appealed from is affirmed.

CORSON, J. (concurring specially.) I concur in the conclusion reached by the Presiding Judge, except as to that portion of his opinion in which he says: "The granting of this rehearing enables us to correct an inadvertent expression in our former opinion, to the effect that the admission of incompetent testimony is no ground for reversal, unless it appears, after disregarding the same, that there is a preponderance of evidence against the finding of the court." In my opinion this is a correct and accurate statement of the law, applicable to the admission of incompetent evidence in a case tried by the court without a jury. The great weight of authority is that in such a case the appellate court will presume that the incompetent evidence was disregarded by the court in making its findings of fact. This being so, the incompetent evidence is, in the consideration of the case by the appellate court eliminated, and in contemplation of law is expunged from the record, and is no longer in the case for any purpose whatever. The case, then, is to be disposed of by the appellate court precisely as any other case tried by the court without a jury, in which none but competent evidence had been admitted, and the rule in such a case has been so often laid down by this court as to scarcely require the citation of authorities, and it is thus stated in Randall v. Burk Tp., 4 S. D. 337, 57 N. W. 4: "On such review of the evidence this court will presume that the decision of the trial court or referee upon the weight of

such evidence is correct; and it is only when this court is satisfied that there is a clear preponderance of the evidence against such decision that such presumption will be overcome, and the decision of the trial court or referee reversed." Why, then, when the incompetent testimony is eliminated and in effect expunged from the record, should any different rule be established for determining the weight of the remaining evidence than is established by this court in all cases of trials by the court without a jury? The rules for determining of cases by this court, which have been long established and are well settled and understood, should not, it seems to me, be changed and a new rule established which seems more applicable to the trial of cases by a jury than to the trial of cases by the court.

HANEY, J. I concur in the views expressed by Mr. Justice CORSON.