# NEW MERCUR MINING CO. et al. v.
# SOUTH MERCUR MINING CO.

No. 6392. Decided July 11, 1942. (128 P. 2d 269.)

See 40 C. J. Mines and Mining, sec. 275; Character of work or expenditures which may be credited to annual assessment or improvement work, note 14 A. L. R. 1463. See also 36 Am. Jur. 365.

*Senior & Senior*, of Salt Lake City, for appellant.

*H. Van Dam, Jr.*, of Salt Lake City, for respondents.

WOLFE, Justice.

Respondent New Mercur Mining Company, brought suit to quiet title on November 2, 1939, claiming ownership, possession, and right to possession subject to the paramount title of the United States, in and to the Violet Ray Nos. 1 to

12 lode mining locations situated in Camp Floyd Mining District, Tooele County, Utah, and alleging that appellant, South Mercur Mining Company, wrongfully claimed an adverse interest. The Snyder Mines, Incorporated as lessee of the New Mercur Mining Company joined with the respondent in an amended complaint.

The appellant by its pleadings denied such ownership and alleged ownership in itself, claiming a forfeiture by respondents, and a relocation by appellant on September 1, 1939.

The ultimate issue raised by the pleadings and stipulation between the parties was whether or not the mining claims in controversy were open to relocation by reason of the New Mercur Mining Company's alleged failure to perform the necessary annual assessment work provided for under 30 U. S. C. A. § 28 (R. S. § 2324).

From a decision and decree by the lower court sitting without a jury in favor of the plaintiffs, defendant prosecutes this appeal.

The New Mercur Mining Company obtained the claims in question by conveyance in 1935. On August 28, 1939, respondent, The Snyder Mines Incorporated, entered into a lease and option to purchase the Violet Ray Nos. 1 to 12 unpatented lode mining claims from the New Mercur Mining Company in which agreement the Snyder Mines Incorporated as lessee covenanted to perform the annual assessment work upon the claims above mentioned, either upon the claims themselves or in the "electric tunnel" which was then being driven on the property adjoining the claims.

The south headings of the "electric tunnel" were located on patented property adjoining the claims in question. This patented property was held by The Snyder Mines Incorporated as lessee under a lease and option from the Consolidated Mercur Gold Mining Company, the owner of the property, to the Lewiston Peak Mining Company, dated June 11, 1934, and assigned to The Snyder Mines Incorporated on July 2, 1936.

Congress on June 30, 1939, extended the period for annual assessment work for the year ending July 1, 1939, to September 1, 1939,

"if such work or improvements are in good faith commenced on or before 12 o'clock meridian September 1, 1939, and prosecuted with reasonable diligence to completion." 53 Stat. 991, Chapter 257.

At noon on September 1, 1939, appellants located the Protection Nos. 4 and 7 to 15 lode mining claims including the area covered by the Violet Ray locations.

Appellant claims error on fourteen counts. Briefly, first, that the decision and decree rendered by the district court in favor of the respondents was against the law and not supported by the evidence; second, that the general finding was deficient in twenty-one particulars, the court having failed to make findings as to all material issues and questions of fact.

Considering the first alleged error, the appellant contends that the respondents suffered a forfeiture through its failure to do the necessary annual assessment work "upon the claim" within the contemplation of U. S. Code, Title 30, Sec. 28, 30 U. S. C. A. § 28 (R. S. § 2324), and as a result it is the owner by virtue of its relocation on September 1, 1939.

Respondent, New Mercur Mining Company, relies upon some of the work performed by its lessee, The Snyder Mines Incorporated, on and after August 28th, 1939, for the annual labor necessary to hold said claims under the provisions of the U. S. Code, Title 30, Sec. 28, 30 U. S. C. A. § 28 (R. S. § 2324).

It has long been settled that the annual assessment work may be performed off the claims, on one of a group of contiguous claims, as well as "on the claim" within the meaning of U. S. Code, Title 30, Section 28, 30 U. S. C. A. § 28. *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875.

In the instant case, appellant's title rests upon the relocation made after respondents alleged forfeiture. The law

does not favor forfeitures. Because of this reluctance on the part of the law, ordinarily the party claiming the forfeiture of a title must both plead it and establish ▓▓ it by clear and convincing proof. *Lockhart* v. *Farrell,* 31 Utah 155, 86 P. 1077; *Strasburger* v. *Beecher,* 20 Mont. 143, 49 P. 740; *Copper Mountain Mining & Smelting Co.* v. *Butte & Corbin Consolidated Copper & Silver Mining Co.,* 39 Mont. 487, 104 P. 540, 133 Am. St. Rep. 595. However, when it appears, as in the case at bar, that the work claimed was done off the claim, then the burden is upon the one claiming that such work fulfilled the requirements of the law and that the work was done for the development of all the claims and was so intended. *Klopenstine* v. *Hays,* 20 Utah 45, 57 P. 712; *Hall* v. *Kearny,* 18 Colo. 505, 33 P. 373; *Brethour* v. *Clack et al.,* 31 Ariz. 24, 250 P. 254; Lindley on Mines, 3rd Edition, Vol. 2, Sec. 630, p. 1554, Sec. 631, p. 1565; Barringer & Adams, The Law of Mines & Mining, Vol. 2, p. 332.

On trial, the work testified to as having been performed by respondents consisted of four separate and distinct projects. First, the building of a road on to the Violet Ray claims which was begun on August 31 ,1939. Second, the clearing and cleaning of several old tunnel workings on the Consolidated Mercur Gold Mining Company's "Hillside claim" by the Snyder Mines Incorporated. Third, an extension of the "electric tunnel" in a southwesterly direction towards the disputed claims. Fourth, an extension of the "electric tunnel" by leasers under lease No. 259 in a southeasterly direction towards the Violet Ray claims.

The record is by no means clear as to whether respondents or appellant ordered the road built upon the Violet Ray claims starting August 31, 1939. Appellant introduced evidence of receipts given to it by the superintendent of the construction company in payment for work ▓ done. On cross-examination, the superintendent testified, "I don't know whose road it was." Respondents' witness, Mr. Wondershek, superintendent of the Snyder

Mines Incorporated, testified that he had ordered the work done. The respondents have failed to prove that they built the road. They cannot rely upon such work as satisfying the requirement as to annual assessment work; nor can the work done on the "Hillside claim" be regarded as preventing a forfeiture. This work was done after the expiration of the extended assessment period. The same is true as to the work performed in the southwest drift of the "electric tunnel." This work did not begin until *after* September 1, 1939. The preliminary work of cleaning the "electric tunnel" approach near the southwest drift and laying the track was performed on or about September 1, 1939, but respondents disclaim any benefits which might have arisen therefrom.

The question, then, of whether the New Mercur Mining Company suffered a forfeiture by appellant's act of relocating at 12 o'clock noon September 1, 1939, turns upon the activities of respondent, Snyder Mines Incorporated, in the southeast heading of the "electric tunnel" on or before 12 o'clock noon of September 1, 1939. It is appellant's contention that respondents had not done the assessment work within the contemplation of 30 U. S. C. A. § 28. Further, that this work in the southeast heading performed by leasers from the Snyder Mines Incorporated was not shown to have been intended in good faith or at all as a resumption of assessment work for the Violet Ray claims; also, that there was no common ownership between the property of the Consolidated Mercur Gold Mines Company and respondent New Mercur Mining Company, so as to permit the application of any work performed to be applied as assessment work for the benefit of the Violet Ray locations.

"Long before patents were allowed, indeed from the earliest period in which mining for gold and silver was pursued as a business, miners were in the habit of consolidating adjoining claims, whether they consisted of one or more original locations, into one, for convenience and economy in working them." Lindley on Mines, 3rd Edition, Vol. 2, Sec. 630; *St. Louis Smelting Co. v. Kemp*, supra.

In the case of *Chambers* v. *Harrington*, 111 U. S. 350, 4 S. Ct. 428, 430, 28 L. Ed. 452, on appeal from a decision by this court, the court quotes from *Jackson* v. *Roby*, 109 U. S. 440, 3 S. Ct. 301, 27 L. Ed. 990, with approval, stating:

"It often happens that for the development of a mine upon which several claims have been located, expenditures are required exceeding the value of a single claim, and yet without such expenditures the claim could not be successfully worked. In such cases it has always been the practice for the owners of the different locations to combine and work them as one general claim; and expenditures which may be necessary for the development of all the claims may then be made on one of them. * * * In other words, the law permits a general system to be adopted for adjoining claims held in common, and in such case the expenditures required may be made or the labor be performed upon any one of them." See also *Love* v. *Mt. Oddie United Mines Co.*, 43 Nev. 61, 181 P. 133, 184 P. 921.

According to the testimony of Mr. Neal Snyder, general manager of The Snyder Mines Incorporated, he was approached by the officers of the New Mercur Mining Company shortly after August 20, 1939, and offered a lease and option to purchase the property if the Snyder Mines, Incorporated would do the necessary assessment work. The negotiations culminated in the lease and option of August 28, 1939. Mr. Snyder testified that the work had actually started prior to the signing of the contract and that it was still in progress. That plans had been formulated to develop the area through the "electric tunnel."

The work mentioned by Mr. Snyder and relied upon by respondent in its brief was being performed by leasers under a lease No. 259 from the Snyder Mines, which had been in operation since March of 1939. On or before September 1, 1939, the respondents' leasers withdrew from the heading which they had been driving and started the southeast drift which we are now considering. This drift had been pushed 170 feet southeasterly at the time of trial. The evidence does not disclose whether the leasers on their own initiative made such change or the Snyder Mines Incorporated had ordered it. It does appear by explanation that the "leas-

ers" had exhausted the ore in the heading and had dropped back fifty feet to where ore was exposed in the tunnel and had followed the ore southeast.

Mr. Earl B. Young, a mining engineer and geologist for the Snyder Mines Incorporated, testified that he had participated in discussions in regard to the development of the Violet Ray claims. That in his opinion the extension of the "electric tunnel" step by step in ore was the most economical and practical method of mining and developing the claims which lie ahead. That they had a long range program. That the "electric tunnel" when driven into the Violet Ray claims would present a main haulage level which was highly desirable for economic mining.

Mr. Marshall, President of the New Mercur Mining Co., a practical miner of some thirty years' experience, testified that in his opinion the continued extension of the tunnel on to the Violet Ray claims was the most feasible method of mining and developing these claims.

Appellant introduced no evidence discrediting the above testimony; hence, it remains undisputed. There does not appear in the record any evidence that the work was a subterfuge, or done in bad faith. On the contrary, there appears nothing but uncontradicted testimony both that the work was practical, tending to develop the claims, and that it was done in good faith, as is evidenced by the continued prosecution of the tunnel, the posting of notice of such work upon each of the claims and at the portal of the tunnel as required by 55-1-5, R. S. U. 1933, prior to the date of expiration, September 1, 1939. One general system was conceived and well adapted in light of the physical surroundings and the geological information then available. *Harrington* v. *Chambers,* 3 Utah 94, 1 P. 362; *Klopenstine* v. *Hays,* supra; *Wilson* v. *Triumph Consol. Mining Co.,* 19 Utah 66, 56 P. 300, 75 Am. St. Rep. 718.

"It is not necessary for a claimant to prepare plants and specifications with regard to how he intends to develop his claims." *Nevada Exploration & Mining Co.* v. *Spriggs,* 41 Utah 171, 124 P. 770, 772.

Point is made that the Snyder Mines Incorporated had been actively mining and developing the Consolidated Mercur Gold Mining Company's property under a previous plan. There is, however, no principle of mining law prohibiting a mining company from enlarging its plan of exploration as was done in the instant case.

The fact that the work under lease No. 259 has been in progress previously does not prevent the work from being applied as assessment work on the Violet Ray claims so long as it is so intended, is practical, and will promote the exploration of the claims in regard to which the assessment work is claimed. The evidence here establishes the good faith of the respondents. *Fissure Mining Co.* v. *Old Susan Mining Co.*, 22 Utah 438, 63 P. 587.

The *Copper Mountain Mining & Smelting Co.* v. *Butte & Corbin Consolidated Copper & Silver Mining Co.*, supra [39 Mont. 487, 104 P. 542, 133 Am. St. Rep. 595], is cited by appellant and relied upon as supporting its view that

"the mere purpose of mining ore in a given area such as activated the granting of and working under lease No. 259 would not render work applicable as assessment work on other claims."

In that case the tunnel was running in the *opposite direction* from the claim and the court expressed its opinion that from the physical evidence the

"tunnel was primarily to encounter pay ore in the M. L. claim, and that it could not reasonably have been intended as a part of any general plan."

That obviously is not the situation here. The fact that here the leasers were operating under a lease of March, 1939, with the expressed intent to find and mine ore within certain designated areas does not necessarily imply that the work could not be also directed toward the general plan of developing all the claims as a unit when there was a definite

intention to make it so. The fact that an attempt is made to discover ore in the course of driving the tunnel or drift does not preclude such work from being assessment work. *Taylor v. Parentau,* 23 Colo. 368, 48 P. 505. It is the general plan and the intent behind it which controls. There was developed subsequently to the granting of this lease a plan or scheme for the development of these additional claims. The prior lease cannot be said to be conclusive evidence of bad faith. At the time it was entered into the future could not be fully foreseen. The Snyder Mines Incorporated had no lease and option at this time from the New Mercur Mining Company.

We now turn to the really difficult part of this case—the community of interest phase.

"There must be a community of interest in each claim. This interest need not be of a strictly legal nature, and different owners of adjoining claims can undoubtedly join in an agreement whereby a single shaft may be sunk or a tunnel driven on one of the claims for the joint benefit of the respective claims, even though not owned in common, and this will count as assessment work on all claims actually benefited, as being a part of a general plan or scheme of development." Lindley on Mines, 3rd Edition, Vol. 2, Sec. 630, p. 1552.

A consideration of the matter of a community of interest merits a few preliminary observations.

Mining law as developed before and contemporaneous with the enactment of congressional acts represents an evolution contributed to by miners' customs and congressional acts which themselves were in some cases a crystallization of those customs. The requirement that, in order to hold possessory title, work must be done on the claim (afterward expanded to permit work to be done for the benefit of the claim whether off or on the claim) had a twofold purpose:. To develop the mineral resources of the nation and to discourage the holding of claims out of competition for any possible unearned increment. From the time of the "tunnel amendment" (Act passed Feb. 11, 1875,.

Sec. 2324, R. S.) the courts have become more liberal in holding that

"work done outside of a claim or groups of claims, if done for the purpose and as a means of prospecting or developing the claim, * * * is as available for holding the claim as if done within the boundaries."

While it is stated (in Sec. 631—Lindley on Mines, Vol. 2, 2nd Ed., page 1557) that the

"tunnel amendment" "did not affect the character of other work to be done or improvements to be made according to the law as it stood before"

certainly the departures from the strict rule which required that the work had to be done on the claim or on one of a group of claims, gained impetus. In *Hain* v. *Mattes*, 34 Colo. 345, 83 P. 127, it was even argued that the Amendment of 1875 was intended to permit the assessment work to be done through a tunnel on land not owned by the claimant. That such may be done is at present the law. That is not to say that the owner of a group of claims can perform his work outside the boundaries of his claim on the property of another as a trespasser or perhaps even as a mere licensee. Lindley on Mines, Sec. 630, p. 1558, 2nd Edition, Vol. II, although doubt has been thrown on whether the claimant must show ownership or control over the land in which the tunnel is driven. *Godfrey* v. *Faust*, 18 S. D. 567, 101 N. W. 718, on rehearing, 20 S. D. 203, 105 N. W. 460, 462.

The term community of interest so often used in the textbooks, Land Board Decisions and cases seems not to have had the favor of accurate definition, perhaps for the very reason that an abstract definition comprehending all concrete cases would be most difficult. Community of ▮▮▮ interest can only pertain where there are separate claims or separate owners. Where the claims are owned in common, or all by one person, and the assessment work done in one of them, the community of interest in the claims is a legal one and the community of interest in the assessment

work is a natural consequence of this legal community of interest. Where there are separate owners the community of interest may in some measure be the amenability of the claims to a common development. However, if the assessment is done off the land of any claimant it is not certain that such community of interest would be sufficient. In such case it would seem that there must be some common right in the assessment work. The owner or owners of the claims whose continued possessory right is made to depend on the development work must have a legal relationship to the work if it is to inure to the benefit of the claim or claims for which it is contended it was done. Where there is a legal relationship between the owner of the land on which the development work is done and the owner of the land claims it may be sufficient to create the community of interest in the workings depending on the nature of that relationship. See in reference to community of interest: *Wilson* v. *Triumph Consol. Mining Co.*, supra; *McDonald* v. *McDonald,* 16 Ariz. 103, 144 P. 950; *Johnson* v. *Young,* 18 Colo. 625, 34 P. 173; *Rickard* v. *Thompson,* 9 Cir., 72 F. 2d 807.

In this case The Snyder Mines Incorporated held the relationship with the New Mercur Mining Co. of lessee of the Violet Ray group of claims with an option to purchase. The property on which was done the development work which is relied on as preventing forfeiture in this case belonged to the Consolidated Gold Mercur Mining & Milling Co. but The Snyder Mines Incorporated had a lease and an option to buy good up to March 1, 1954 during which time the claims were demised to it, the royalties under the lease to be credited on the purchase price of $375,-000. While the matter is not free from doubt we think the leasor relationship between the Consolidated Gold Mercur Mining & Milling Co. and The Snyder Mines Inc. with option to purchase was sufficient to give the New Mercur Mining Co. a community interest in the work in the tunnel for purposes of making such work inure to support its possessory title and reasonably tended to develop the Violet Ray claims,

a fact in regard to which we have already held there was sufficient evidence to so find. The fact that the Snyder Mines might discontinue with the lease or default in the option cannot affect the current efficacy of that work to prevent forfeiture of the possessory rights to the Violet Ray claims.

In the instant case, the respondent, Snyder Mines Incorporated, is not a trespasser on the Consolidated Mercur Gold Mining Company's property. The fact that the agreement between them conveys no title to the property until payment of the purchase price, even should it be construed as impliedly covenanting that the property should not be used for any purpose other than that which it was demised, does not prevent the performance of assessment work to be applied on adjoining claims by the lessee as against a stranger. The respondent is on the property as a lessee with an option to buy and have the rental paid credited on the purchase price. The appellant is in no position here to urge that the agreement between the grantor and grantee mining company did not contemplate assessment work for adjoining claims. The fact that work which has a direct tendency to develop the claims owned by other parties was not contemplated as assessment work for such claims by the grantor and grantee in their agreement, cannot be relied upon by a stranger to the agreement to work a forfeiture. *Brewster* v. *Shoemaker*, 28 Colo. 176, 63 P. 309, 53 L. R. A. 793, 89 Am. St. Rep. 188; *Godfrey* v. *Faust*, 18 S. D. 567, 101 N. W. 718; *Id.*, 20 S. D. 203, 105 N. W. 460.

The case of *Percy La Salle Mining & Power Co.* v. *Newman Mining, Milling & Leasing Co.*, D. C., 300 F. 141, cited and relied upon by appellant is not in point here. That case arose out of a dispute between the grantor and grantee mining companies. A stranger was not involved.

The case of *Hawgood* v. *Emery*, 22 S. D. 573, 119 N. W. 177, 133 Am. St. Rep. 941, urged by appellant as being of "particular interest and applicability in the case at bar" is readily differentiated. In that case there was an attempt

of one partner to enter into a scheme whereby, without any agreement therefor with his partner, he would perform work upon property of which he was the sole owner, and upon property of which he was part owner with third parties, and hold the defendant liable therefor. The court held that in the absence of a general plan or scheme for development for the doing of such work, he cannot hold his co-partner liable. This clearly differs from the case at bar. Here we have an agreed plan or scheme. The fact that the legal owner of the property had not entered into the agreement does not make it analogous.

The case of *Mt. Diablo M. & M. Co.* v. *Callison*, Fed. Cas. No. 9,886, 5 Sawy. 439, aptly expresses our opinion.

"A general system of work for the exploration of the whole ground embraced in these three sets of contiguous claims seems to have been carried on by plaintiff. And we think all work done was a part of that general system, and, as such, applicable to all the claims which had by purchase been concentrated in a single party, the plaintiff."

In the case of *Hain* v. *Mattes*, 34 Colo. 345, 83 P. 127, at page 130, appears the following language:

"If labor performed upon a wagon road outside the boundaries of the claim, or 'outside of any claim' (Mt. Diablo case, supra), or 'at a distance from the claim itself' (*St. Louis* [*Smelting*] *Co.* v. *Kemp*, supra), or 'upon a patented claim' (Hall-Kearney case, supra), may be held to be a compliance with the law relating to annual assessment work, work done in a tunnel for the purpose of developing the claim, and which has a tendency to develop it, may be so considered regardless of the contiguity or noncontiguity of territory, from the portal of the tunnel to the claim sought to be developed. The true test to be applied is, does the work benefit or tend to benefit the claim, and was it done for the purpose of developing the claim? The fact that the territory between the tunnel and the claim to be developed is vacant and unoccupied, *or owned by another person*, becomes important only in so far as that fact, if it exists, may have a bearing upon the ultimate question of fact, *as to whether the tunnel does or does not tend to develop the claim*, which question of fact, must be determined by the jury under proper instructions. Our conclusion is that there was no error in the instruction." (Italics added.)

The Hain case, supra, is to be restricted here to the facts of the case at bar. We do not go to the extreme here of finding that the territory separating the claims may be owned by a stranger and still allow the assessment work to apply. We do find that the work performed in the in- stant case by The Snyder Mines Incorporated, which owns an equitable interest in the adjoining ground by reason of its performance on the contract of purchase with the Consolidated Mercur Gold Mining Company, may be applied as assessment work on adjoining properties of the New Mercur Mining Company.

"In cases like the one at bar, this court has held that the general findings of the trial courts, when 'not clearly against the preponderance of the evidence,' will not be disturbed." *Nevada Exploration & Mining Co.* v. *Spriggs*, supra.

We now consider the contention of appellant that the trial court failed to find on all the material issues and questions of fact. It was stipulated in open court at the outset of the trial that the sole question was as to whether the Protection No. 4 and 7 to 15 lode mining claims which included the area covered by the Violet Ray locations were open to location at 12 o'clock noon September 1, 1939. This question depended on whether the New Mercur Mining Company had forfeited its possessory title by failing to do the required assessment work before that time. Findings 3 and 4 are as follows:

"3. That the New Mercur Mining Company, one of the plaintiffs, subject to the paramount title of the United States Government and the lease and option granted to The Snyder Mines Incorporated, the other plaintiff as herein set out, was from March, 1931, and now is the owner and in possession of the following described lode mining claims situate in the Camp Floyd Mining District, Tooele County, Utah, namely, Violet Ray Nos. 1 to 12, both inclusive.

"4. That on the 28th day of August, 1939, the New Mercur Mining Company executed and delivered to The Snyder Mines Incorporated a lease on the said Violet Ray Nos. 1 to 12 lode mining claims, and other lode mining claims owned by it and contiguous thereto, and under said lease agreement granted to said lessee a four year lease thereon

148

and the possession thereof with the right to prospect for and develop and mine minerals therefrom and with the duty to perform the annual assessment work in accordance with the terms of said contract for said Violet Ray Nos. 1 to 12, lode mining claims, and with the right to purchase all of said lode mining claims; and pursuant to the terms of said lease and option The Snyder Mines Incorporated entered into possession of all of said leased lode mining claims on the 28th day of August, 1939, and since said date has been and now is in possession thereof."

These findings, in view of the evidence and the stipulation, formed the basis for the conclusion that there had not been a forfeiture and therefore a basis for the more ultimate conclusion that plaintiffs had the possessory title and defendants had no estate or interest in said Violet Ray claims.

Any more detailed findings on subsidiary or other facts would necessarily have been adverse to the appellant, as appears from the evidence and the law hereinabove discussed. *Maynard* v. *Locomotive Eng. Ins. Ass'n,* 16 Utah 145, 51 P. 259, 67 Am. St. Rep. 602; *Western Securities Co.* v. *Spiro,* 62 Utah 623, 221 P. 856.

The work being in progress at noon on September 1, 1939, by the Snyder Mines Incorporated on behalf of the New Mercur Mining Company, and having since been prosecuted with diligence, brings the respondents within the provision of Chapter 257, 53 Stat. 991, and 30 U. S. C. A. § 28 (R. S. § 2324); thus preventing a forfeiture and making appellant's alleged relocation invalid. *Lockhart* v. *Farrell,* supra.

The judgment is affirmed, with costs.

MOFFAT, C. J., and LARSON and McDONOUGH, JJ., concur.

PRATT, J., on leave of absence.

REPORTER'S NOTE

December 7th, 1942 Order entered staying issuance of remittitur pending proceedings to remove case by appeal or certiorari to the Supreme Court of the United States.

May 17, 1943, Petition for certiorari denied by Supreme Court of the United States.