No. 83-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

SILVER JET MINES, INC.,
a Mont. corp.,

        Plaintiff, Respondent & Cross-Appellant,

   -vs-

FRANKLIN SCHWARK,

        Defendant and Appellant.,

---

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Sanders,
              The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Garlington, Lohn & Robinson; Paul C. Meismer,
        Missoula, Montana

    For Respondent & Cross-Appellant:

        Baxter, Fletcher & Hanson; Robert L. Fletcher,
        Thompson Falls, Montana

---

Submitted on Briefs:  March 1, 1984

Decided:  May 17, 1934

Filed:

MAY 17 1984

_Ethel M. Harrison_

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This action was brought by Silver Jet Mines, Inc. to quiet title in itself to four unpatented lode mining claims in the Burns Mining District in Sanders County, Montana which are also claimed by Franklin Schwark. Title to three of the claims was found to be in Schwark and the fourth in Silver Jet. Schwark appeals as to the claim quieted to Silver Jet and Silver Jet cross appeals as to the remaining three.

Silver Jet is the successor in interest to certain mining properties once held by the Montana Standard Mining Company. The claims in dispute here are approximately ten miles southwest of Thompson Falls, Montana in the area of Prospect Creek. In the 1930's Montana Standard obtained patents to ten claims lying south of Prospect Creek. The creek runs through the bottom of a valley and the claims were worked by means of several tunnels which extended south, away from the creek into the hillside. The unpatented claims here in dispute were not located by Montana Standard until the 1950's and lie on the opposite side of the valley, north of Prospect Creek.

Three of the four claims in dispute, "Bettye," "Tucker" and "Mary" were originally located as mill sites in 1954, but amended notices of location were filed in 1957 changing them to lode claims. Also in 1957 the fourth claim, "Riverside" was located. Discovery and corner location on Riverside all occurred in 1957. Mining work continued on the patented claims and on Riverside until 1960 at which time all mining operations by Montana Standard in

-2-

the area ceased. There was intermittent assessment work done by Montana Standard, Silver Jet after it obtained the claims, and several would be locators until approximately 1980, when this dispute arose.

Schwark is a long time resident of the area and had noticed rock outcroppings in the area during hunting trips. In 1979 he inquired of the Bureau of Land Management concerning the existence of claims north of Prospect Creek, and was informed there were none. In September 1980, Schwark and Donald Grimm located several unpatented claims known as the "Grub Stake" group. Six of these claims overlapped with the four unpatented Silver Jet claims. In the summer of 1981, Schwark began extracting ore samples from his unpatented claims. Remos Killian, president of Silver Jet, observed Schwark and notified him of the conflict. Discussions as to ownership ensued, and a short time later Silver Jet filed this action to quiet title in itself to the four claims.

The complaint was filed on October 2, 1981, requesting that Schwark be enjoined from entering onto Silver Jet's mining claims and that title to the claims be quieted to Silver Jet. An order to show cause was issued on October 6, 1981 and a hearing on Silver Jet's request for an injunction was held on October 27. After the hearing, both parties were restrained from performing assessment work, removing minerals or otherwise disturbing the ground on the disputed area of the claims. On February 23, 1982, Schwark filed his answer and asserted a counter claim for damages resulting from the forced cessation of his mining activity. A non-jury trial before Judge Jack L. Green was held in August

of 1982, at which both parties presented evidence on the validity of the claims, reserving the question of damages. Findings of fact, conclusions of law and the order were entered on February 8, 1983. Schwark was found to have title to the conflicting parts of the Bettye, Tucker and Mary claims, because of invalid discovery by Silver Jet's predecessor Montana Standard. However, Silver Jet was found to have good title to the Riverside claim. Schwark appeals from this finding, and Silver Jet appeals from the finding concerning the Bettye, Tucker and Mary claims.

We first discuss the issues raised on direct appeal by Schwark, concerning the Riverside claim. Schwark alleges two defects in Silver Jet's work on the claim which, he argues, result in a forfeiture. First he attacks the sufficiency of the discovery by Silver Jet's predecessor in interest, and second he attacks the sufficiency of the annual assessment work done by Silver Jet.

A condition precedent to a valid mining location is the, "[A]ctual discovery of a vein, lode or ledge of rock in place bearing a valuable mineral deposit." Anaconda Co. v. Whittaker (Mont. 1980), 610 P.2d 1177 at 1179, 37 St.Rep. 902 at 904, citing Upton v. Larkin (1885), 5 Mont. 600, 6 P. 66. When a subsequent locator questions the existence of such a discovery, it is incumbent on the original locator to prove that he has discovered sufficient minerals as will meet the "prudent man" test. Boscarino v. Gibson (Mont. 1983), 672 P.2d 1119, 40 St.Rep. 1931. The prudent man rule has been stated as,

> "Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of

-4-

his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met." Chrisman v. Miller (1905), 197 U.S. 313, 322-23, 25 S.Ct. 468, 470-71, 49 L.Ed 770, 773-74.

There is no requirement that ore be found in sufficient quantity to support a profitable mining operation, nor is it required that any specific quantity of ore be found. In the end, the sufficiency of discovery is a question of fact to be decided below. Boscarino, supra.

The trial court here found there had been a sufficient discovery of minerals on the claim and we agree. The certificate of location filed by the original locators in 1957 is prima facie evidence of the existence of a valid discovery. Section 82-2-102(2), Thomas v. South Butte Mining Co. (9th Cir. 1914), 211 F. 105; motion denied, 34 S.Ct. 999, 234 U.S. 754, 58 L.Ed. 1578. Prima facie evidence will stand unless contradicted and overcome by other evidence. Section 26-1-102(6), MCA. In this case, the prima facie evidence was not contradicted or overcome by any other evidence presented. Though the two men who originally located the claim for Montana Standard are now deceased, the wife of one of the locators testified that there was a vein showing in a shaft on the claim and that minerals had in fact been extracted. As the discussion in Boscarino shows, the burden of proving discovery is not high. The question of how much ore is sufficient to sustain a discovery is properly left to the trial court, and its decision will not be overturned if supported by substantial evidence. Boscarino, supra. Such evidence existed here.

Schwark next attacks the sufficiency of the annual assessment work performed on behalf of Silver Jet. Since

-5-

Schwark did not locate his claim until September of 1980, we only need scrutinize the assessment work of 1980, as the assessment work for prior years in inconsequential. If the 1980 work is sufficient, Silver Jet has a valid claim. Thornton v. Kaufman (1910), 40 Mont. 282, 106 P.2d 361. If the 1980 work is insufficient, even sufficient work from prior years could not save Silver Jet's claim, presuming a valid subsequent location by Schwark. 30 U.S.C. 28 and Public Service Co. of Oklahoma v. Bleak (Ariz 1982), 656 P.2d 600. It should also be noted that although Schwark's location was done in the calendar year 1980, the prior annual assessment period ended on August 30, 1980. For Schwark's location to be valid, Silver Jet's assessment work for the period of time beginning September 1, 1979 and ending August 30, 1980 must be invalid. See 30 U.S.C. 28 and Consolidated Tungsten Mines, Inc. v. Frazier (Ariz. 1960), 348 P.2d 734.

The assessment work claimed to have been done by Silver Jet consisted of securing the entrance to "tunnel #3" to prevent unauthorized entry, clearing growth on the path to the tunnel, and clearing approximately 6000 square yards of ground. This work was done on Silver Jet's patented claims, but it claimed attribution to the unpatented claims under Section 82-2-103(2), MCA. Schwark alleges two defects here as well; first, that the work claimed is not proper annual assessment work, and second that it may not be attributed from the patented to the unpatented claim.

Generally, assessment work must tend to develop the claim and facilitate the extraction of ore therefrom. Golden Giant Mining Co. v. Hill (N.M. 1921), 198 P. 276.

Whether or not the work done meets this requirement is a question of fact, but courts should not substitute their own judgment as to the wisdom and expediency of the method employed for developing the mine in place of that of the owner. Mann v. Budlong (Cal. 1900), 62 P. 120. The trial court's finding that assessment work is sufficient to prevent an unpatented claim from being opened for relocation will not be disturbed on appeal unless clearly against the preponderance of the evidence. New Mercur Mining Co. v. South Mercur Mining Co. (Utah 1942), 128 P.2d 269, cert. den. 63 S.Ct. 1162, 319 U.S. 753, 87 L.Ed. 1707.

The trial court found that the work claimed in the 1980 affidavit of annual assessment was valid assessment work, and we agree. There was evidence elicited at trial which showed that the clearing could and would be used as the needed base of operations for mining the unpatented claims. There was also evidence that the unpatented claims could be mined from tunnel #3. Thus the work done on these directly facilitate the development of the mine and the extraction of ore. It has been held that road work and repair work done on roads to mining claims both constitute valid assessment work, and the work claimed here is more closely related to development of the mine than either of those. Pinkerton v. Moore (N.M. 1959), 340 P.2d 844. Schwark alleges that this same work has been done repeatedly in the past, and this should lead to the conclusion that the assessment work claimed for 1980 was insufficient. However, as noted before, what happened prior to 1980 is inconsequential as Schwark did not attempt to locate until that year. The trial judge correctly ruled that this was

-7-

valid assessment work.

Schwark next contends that this work was performed on the patented claims and may not be attributed to the unpatented claim. Assessment work not done on a particular claim or group of claims may only be attributed to the claim(s) if it is done,

> "[F]or the purpose of developing the claims and to facilitate the extraction of ore therefrom . . . In such case the work or expenditure must be for the purpose of developing all the claims. . . If the work is not a part of a general plan having in view the development of the group or consolidated claim, so that the ore may be more readily extracted, and the work has no reasonable adaptation to that end, then no matter what the amount of it is, it cannot be said to have been done in the development of the group." Copper Mountain Mining and Smelting v. Butte and Corbin Consolidated Copper and Silver Mining Co. (1909), 39 Mont. 487 at 492-3, 104 P.540 at 541-2.

The burden of proving such a benefit to the other claims is on the one seeking attribution. Copper Mountain, supra. The trial court found that Silver Jet had met this burden, and again we agree. As noted above, all the 1980 assessment work was done off of the Riverside claim. However the evidence showed that the clearing is the closest flat area to the unpatented claims, and it would be necessary to base any mining operation on Riverside in that area. There is also evidence that the dike of mineral evident on the Riverside claim spans the valley onto the patented claims, where it is tapped by tunnel #3. The Riverside claim could be mined through tunnel #3. Remos Killian, past president of Silver Jet, testified that this was the company's plan; to base their operation on the patented claims and branch out onto the unpatented claims.

-8-

Although there was testimony that this would be quite expensive, there has never been a requirement that the easiest or most efficient method of mining a claim be employed. Courts cannot substitute their judgment for the miner's. Mann, supra. The evidence showed how the work would aid their plan and benefit the Riverside unpatented claim. The trial court correctly ruled that it could be attributed from the patented claims to the Riverside claim.

On cross appeal, Silver Jet contests the trial court's action quieting title to the overlap portions of the Mary, Bettye and Tucker unpatented claims to Schwark. Silver Jet contends that the court applied an incorrect rule of law to require forfeiture. It is their position that the court applied the "marketability" test to Silver Jet's predecessor's location which would be an incorrect application of the law as between rival claimants. See Boscarino v. Gibson (Mont. 1983), 672 P.2d 1119, 40 St.Rep. 1931. However, the trial court specifically found that:

> "Plaintiff was unable to prove that they or their predecessors had located a valuable mineral deposit on any of the unpatented claims except Riverside. Failure to establish a prima facie showing of valuable mineral deposits renders the Plaintiff's interest in the Bettye, Tucker and Mary unpatented claims invalid."

Based on the above finding the court ruled that:

> "Plaintiff's interests in the Bettye, Tucker and Mary unpatented lode claims are deemed forfeited because of the Plaintiff and its predecessors' failure to substantially comply with state and federal mining law intended to develop mineral deposits on the public domain."

Contrary to Silver Jet's assertions, the trial court based its decisions on the failure to locate any minerals,

-9-

not a failure to locate a marketable amount. This conclusion is borne out by an examination of the testimony at trial. Of the witnesses who were acquainted with the workings in the area at the time these claims were located, none testified to any minerals being found on these three claims or any mining work being done on them. The evidence showed that the Riverside claim was the only unpatented claim ever worked. Thus the trial court properly found that there had been no valid location on the Mary, Bettye and Tucker, and Schwark was free to locate on that property.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices